GUTRIDE SAFIER LLP
Adam J. Gutride (State Bar No. 181446)
Seth A. Safier (State Bar No. 197427)
Marie A. McCrary (State Bar No. 262670)
100 Pine St., Suite 1250
San Francisco, California 94111
Telephone: (415) 271-6469
Facsimile: (415) 449-6469

Stephen M. Raab (appearing *pro hac vice*)
113 Cherry Street, #55150
Seattle, WA 98140-2205
Telephone: (415) 639-9090 x109

MIGLIACCIO & RATHOD LLP
Nicholas Migliaccio, (appearing *pro hac vice*)
Jason Rathod (appearing *pro hac vice*)
Esfand Nafisi (State Bar No. 320119)
412 H Street NE, Suite 302
Washington, D.C. 20002

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH CARLOTTI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ASUS COMPUTER INTERNATIONAL; ASUSTEK COMPUTER INC., and DOES 1-50,<br><br>Defendants. | CASE NO. 18-CV-03369-DMR<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF CLASS SETTLEMENT, PROVISIONAL CERTIFICATION OF NATIONWIDE SETTLEMENT CLASS, AND APPROVAL OF PROCEDURE FOR AND FORM OF NOTICE TO SETTLEMENT CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:      August 22, 2019<br>Time:      1:00 p.m.<br>Courtroom:  7, 19th Floor<br>Judge:      Hon. Donna M. Ryu |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on August 22, 2019 at 1:00 p.m. or as soon thereafter as the matter may be heard by the Honorable Donna M. Ryu of the United States District Court for the Northern District of California, Oakland Division, located in Courtroom 4 at 1301 Clay Street, Oakland, California 94612, Plaintiff Joseph Carlotti, by and through his undersigned counsel of record, will and hereby does move for entry of an order:

(1) approving, for settlement purposes only, the certification of a Settlement Class defined as "all persons in the United States who purchased a new ASUS Rog Strix GL502VS or ASUS Rog Strix GL502VSK laptop computer from Defendants or an authorized ASUS retailer of Defendants between May 4, 2014 and the date Preliminary Approval is entered." Excluded from the Class are (a) the Honorable Magistrate Donna Ryu and any member of her immediate family; (b) any government entity; (c) Martin Quinn and any member of his immediate family; (d) Defendants; (e) any entity in which Defendants have a controlling interest; (f) any of Defendants' parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; (g) any person whose purchase of a Laptop was for resale purposes; (h) any person who timely opts out of the Settlement; (i) any person who received a full refund of a Laptop's entire purchase price from ASUS or a retailer in connection with the Power Defect, Overheating Issue, or heat-related issues alleged in the Lawsuit; (j) any person who received a replacement Laptop that did not suffer from the Power Defect or Overheating Issue; (k) any person who signed a release regarding their Laptop; and (l) all persons who have filed a timely request for exclusion from the Class.

(2) approving dissemination of Class Notice to all Class Members who would be bound by the settlement of this class action as set forth in the Class Action Settlement Agreement dated July 8, 2019 ("Settlement" or "Settlement Agreement");

(3) directing the dissemination of Class Notice in the form and manner set forth in the Settlement; and

(4) setting a date for a Final Approval Hearing.

A copy of Plaintiff's unopposed [Proposed] Order Granting Preliminary Approval of Class Action Settlement is attached to the Settlement Agreement as Exhibit D and also separately submitted herewith.

**PLEASE ALSO TAKE NOTICE** that, after expiration of the time for Class Members to opt out or object, and upon the occurrence of the Final Approval Hearing, Plaintiff will seek entry of a further order:

(1) granting final approval to the Settlement and entering judgment thereon;

(2) requiring Defendants to provide the Extended Warranty to all eligible Class Members as set forth in the Settlement;

(3) requiring Defendants to pay all Valid Claims made by Class Members as set forth in the Settlement;

(4) awarding an Incentive Award of in the amount of $5,000 to Plaintiff Joseph Carlotti; and

(5) awarding Attorneys' Fees and Expenses to Plaintiff's Counsel in the amount of $787,500.00.

This Motion is based on Federal Rule of Civil Procedure 23, this Notice of Motion, the supporting Memorandum of Points and Authorities, the Gutride Declaration, the Nafisi Declaration, and the pleadings and papers on file in this action, and any other matter of which this Court may take judicial notice.

Dated: July 8, 2019                    Respectfully submitted,


                                        _/s/ Marie A. McCrary____/_
                                        **GUTRIDE SAFIER LLP**
                                        Adam J. Gutride (State Bar No. 181446)
                                        Seth A. Safier (State Bar No. 197427)
                                        Marie A. McCrary (State Bar No. 262670)
                                        100 Pine St., Suite 1250
                                        San Francisco, California 94111
                                        Telephone: (415) 271-6469
                                        Facsimile: (415) 449-6469

Stephen M. Raab (appearing *pro hac vice*)
113 Cherry Street, #55150
Seattle, WA 98140-2205
Telephone: (415) 639-9090 x109

**MIGLIACCIO & RATHOD LLP**
Esfand Nafisi (State Bar No. 320119)
Nicholas Migliaccio, (appearing *pro hac vice*)
Jason Rathod (appearing *pro hac vice*)
412 H Street NE, Suite 302
Washington, D.C. 20002

Attorneys for Plaintiff

MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 18-CV-03369-DMR

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ..............................................................................1

I.  INTRODUCTION .............................................................................................................................1

II. PROCEDURAL BACKGROUND ...................................................................................................4

III. TERMS OF THE PROPOSED SETTLEMENT ...........................................................................5

    A.  The Settlement Class .................................................................................................................5

    B.  The Benefits Conferred on the Class Under the Settlement. .....................................................5

        1.  The Extended Warranty .......................................................................................................6

        2.  Monetary Relief. .................................................................................................................6

        3.  Payment of Administrative Expenses, Attorneys' Fees and Costs, Representative Service Awards. ......................................................................................................................................7

        4.  The Release of Settlement Class Members' Claims. ...........................................................8

    C.  The Proposed Notice Plan Under the Settlement. ......................................................................8

IV. THE COURT SHOULD APPROVE THE SETTLEMENT. ........................................................10

    A.  Legal Framework. ...................................................................................................................10

    B.  The Settlement Is Fair, Adequate, and Reasonable. ................................................................11

        1.  Procedural Concerns. ........................................................................................................11

            a.  Adequate Representation of the Class. ...........................................................................11

            b.  Arm's Length Negotiations. ...........................................................................................12

        2.  Substantive Issues. ...........................................................................................................13

            c.  Strength of Plaintiff's Case and Risks of Continued Litigation. .....................................13

            d.  Effectiveness of Distribution Method. ...........................................................................16

            e.  Terms of Attorneys' Fees. .............................................................................................16

            f.  Supplemental Agreements. .............................................................................................16

            g.  Equitable Treatment of Class Members. .........................................................................16

            h.  Plaintiff's Counsel's Experience. ...................................................................................17

            i.  Past Distributions. ..........................................................................................................18

V.  THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS .......................................18

    A.  The Settlement Class Satisfies Rule 23(a). .............................................................................19

        1.  Rule 23(a)(1): Numerosity. ...............................................................................................19

        2.  Rule 23(a)(2): Commonality. ............................................................................................19

        3.  Rule 23(a)(3): Typicality. .................................................................................................20

        4.  Rule 23(a)(3): Adequacy. .................................................................................................20

D.   Because Common Question of Fact or Law Predominate, the Class Satisfies Rule 23(b)(3)..21

   1.   Common Questions of Law and Fact Predominate Nationwide. ...........................21

   2.   A Class Action Is the Superior Mechanism For Adjudicating This Dispute. .......................22

E.   The Class Also Satisfies Rule 23(b)(2)......................................................................23

VI. THE PROPOSED NOTICE PROGRAM CONSTITUTES ADEQUATE NOTICE UNDER RULE 23 AND SHOULD BE APPROVED..........................................................................23

VII. APPROVAL OF THE ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARD. ..............................................................................................................................24

A.   Plaintiff's Counsel's Fee Request is Reasonable Under the Lodestar Approach. ...................24

   1.   Legal Standard.......................................................................................................24

   2.   Plaintiff's Counsel's Requested Fee Is Reasonable When Using The Lodestar Approach. ..25

   3.   Plaintiff's Counsel's Requested Fee Is A Reasonable Percentage of the Total Benefit Made Available To the Class. .................................................................................................32

B.   APPROVAL OF THE CLASS REPRESENTATIVE'S INCENTIVE AWARD...................34

VIII.  THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE ......................................36

IX. CONCLUSION ......................................................................................................................36

MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 18-CV-03369-DMR

**CASES**

*Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ...................................................................................................................................12

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)..................................................................18

*Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439 (N.D. Cal. 1994) ............................20

*Curtis-Bauer v. Morgan Stanley & Co., Inc.,* 2008 WL 4667090 (N.D. Cal. Oct. 22, 2008)............15

*Garner v. State Farm. Mut. Auto. Ins. Co.,* 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)...............13

*Gen. Tel. Co. of the Southwest Falcon*, 457 U.S. 147 (1982) ............................................................20

*Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL 2438274 (N.D. Cal. May 21, 2015) .......................28

*Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045  (N.D. Cal. Dec. 17, 2018) ...................................................................................................................................11

*In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6 1991)..................................15

*In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2016 U.S. Dist. LEXIS 179487 (N.D. Cal. Sep. 14, 2016)................................................................................................................19

*In re Netflix Privacy Litig.*, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .....................................15

*In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ............................................................................................................................................17

*In re Optical Disk Drive Prod. Antitrust Litig.,* 2016 WL 7364803 (N.D. Cal. Dec. 19, 2016).........28

*Johnson v. Triple Leaf Tea Inc.,* 2015 WL 8943150 (N.D. Cal. Nov. 16, 2015).............................15

*Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal. 1988) .................................................................17

*Lilly v. Jamba Juice Co.*, 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) .........................................23

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523 (C.D. Cal. 2004) .................12, 17

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 9448 (9th Cir. 2009)...........................................13, 14, 17

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ........................................................12

*Slaven v. BP Am., Inc.*, 190 F.R.D. 649 (C.D. Cal 2000) ...............................................................19

*Stewart v. Applied Materials, Inc.*, No. 15-cv-02632-JST, 2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) .............................................................................................................................................17

*United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403 (9th Cir. 1990) ......................27

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ................................................................19

**STATUTES**

15 U.S.C. § 2301 ...............................................................................................................................6

28 U.S.C. § 1715 .................................................................................................................1, 15, 31

Cal. Bus. and Prof. Code § 17200 ....................................................................................................6

Cal. Bus. and Prof. Code § 17500 ....................................................................................................6

Cal. Civ. Code § 1750 .......................................................................................................................6

Cal. Civ. Code § 1790 .......................................................................................................................6

Fed. R. Civ. P. 23(a)(1) ...................................................................................................................25

Fed. R. Civ. P. 23(a)(3) ...................................................................................................................26

Fed. R. Civ. P. 23(a)(4) ...................................................................................................................27

Fed. R. Civ. P. 23(b)(2) ...................................................................................................................29

Fed. R. Civ. P. 23(b)(3) ..............................................................................................................27, 29

Fed. R. Civ. P. 23(b)(3)(D) .............................................................................................................24

Fed. R. Civ. P. 23(c)(2)(b) ..........................................................................................................13, 30

Fed. R. Civ. P. 23(e) ....................................................................................................................1, 20

Fed. R. Civ. P. 23(e)(1) .........................................................................................................23, 24, 30

Fed. R. Civ. P. 23(e)(2) ...................................................................................................................19

Fed. R. Civ. P. 30(b)(6) ...............................................................................................................6, 23

MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 18-CV-03369-DMR

**TREATISES**

Newberg on Class Actions §14:03 (3d ed. 1992) .........................................................12, 18, 25, 27

Manual for Complex Litigation, § 21.312 (4th ed. 2004) ...................................................17

MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 18-CV-03369-DMR

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff Joseph Carlotti ("Plaintiff"), by and through Plaintiff's Counsel,[1] respectfully submits this memorandum in support of Plaintiff's Motion for Approval of Class Action Settlement Provisional Certification of Nationwide Settlement Class, and Approval of Procedure for and Form of Notice to Settlement Class (the "Motion"). The Settlement Agreement (hereafter, "Settlement" or "Settlement Agreement") and its exhibits, which are attached as Exhibit 1 to the Declaration of Adam Gutride (the "Gutride Decl."), filed herewith, was negotiated following the guidelines provided in the Northern District's Procedural Guidance for Class Action Settlement ("N.D. Cal. Guidelines") and meets all the criteria for approval under Federal Rule of Civil Procedure ("Rule") 23.

Plaintiff's operative complaint, Dkt. No. 1, alleges that Defendants ASUSTeK Computer Inc. ("ASUSTeK") and ASUS Computer International ("ACI") (collectively, "ASUS" or "Defendants") deceptively advertised the suitability of the ASUS Rog Strix GL502VS and the ASUS Rog Strix GL502VSK laptop ("Laptop" or "Laptops") as portable gaming computers. In particular, Plaintiff alleges that the Laptop he purchased suffered from the following two defects: (1) the Laptops' power supply unit did not provide sufficient power to the Laptop such that its battery drained during use even when it was plugged into electric outlets; it experienced reductions in computational performance when it was low on battery power or when the battery was removed, even when the Laptop was connected to an electrical outlet; and that there was accelerated degradation of the Laptop's battery (the "Power Defect"); and (2) the Laptop's cooling system inadequately dissipated heat generated during computationally demanding tasks such that the Laptop became hot to the

---

[1] All capitalized terms not otherwise defined herein shall have the same definitions as set out in the Settlement Agreement. *See* Gutride Decl., Ex. 1.

touch during use (the "Overheating Issue"). Plaintiff alleges that all the Laptops experienced the Power Defect and Overheating Issue. Defendants have vigorously denied these allegations and asserted numerous defenses.

Plaintiff's Counsel and Defendants' Counsel conducted a thorough examination and investigation of the facts and law relating to the matters in the Litigation. Such investigation and discovery included the retention and consultation of an electrical engineering expert by Plaintiff's Counsel, requesting and receiving written discovery responses from ACI, examining Defendants' documents, and questioning Defendants about their documents. (Gutride Decl., ¶¶ 7-9.) Further, Defendants deposed Plaintiff. (Id., ¶ 10.)

On March 19, 2019, the Parties participated in an all-day mediation conducted by Martin Quinn, Esq. of JAMS, which resulted in the Settlement. Pursuant to the Settlement, Defendants have agreed to provide an extended warranty on all ASUS Rog Strix GL502VS laptops to cover Qualifying Repairs, which includes repairs to and/or replacement of a motherboard and/or new AC power adapter. This extended warranty will remain in place until the later of: (i) three years from the date of purchase; (ii) 90 days from Final Approval; or (iii) 180 days following the date that ASUS replaced the internal power supply and/or power adaptor ("Extended Warranty"). The value of the Extended Warranty is estimated at $6.7 million. (Nafisi Decl., ¶ 18.)

Defendants have also agreed to make up to $5.2 million in monetary benefits available to Class Members as follows. All Class Members who previously complained of the Power Defect or Overheating Issues to Defendants will automatically receive a $210 Credit Certificate and need not file a Claim unless they opt for a Cash Payment. Class Members can receive a $210 Credit Certificate or a $110 Cash Payment if they: (a) registered their Laptop with ASUS; (b) purchased their Laptop from ASUS's website; or (c) submit Proof of Purchase of the Laptop with their Claim Form. Class Members who cannot meet any of these proof requirements can obtain a $105 Credit

Certificate or $55 Cash Payment as long as they provide the Laptop's Serial Number with the Claim Form.

Plaintiff will seek approval of an Incentive Award of $5,000 after the Class Members are notified and have the opportunity to object. Plaintiff's Counsel will seek approval of an award of $787,500.00 in Attorneys' Fees and Expenses after the Class Members are notified and have the opportunity to object. Plaintiff and his counsel have not yet received any compensation for their work on this case or for the out-of-pocket expenses they have incurred (for experts, filing fees, etc.).

The Settlement is fair and reasonable and falls within the range of possible approval. It is the product of extended arms length negotiations between experienced attorneys familiar with the legal and factual issues of this case and all Class Members are treated fairly under the terms of the Settlement. Plaintiff, by and through his counsel, has conducted an extensive investigation into the facts and law relating to this matter as set forth below and in the accompanying Declarations of Adam Gutride and Esfand Nafisi. Plaintiff and his counsel hereby acknowledge that in the course of their investigation they received, examined, and analyzed the information, documents, and materials that they deem necessary and appropriate to enable them to enter into the Settlement on a fully informed basis. It is an outstanding result for Class Members.

Continued litigation carries considerable risk of a lesser recovery or none at all. Defendants vigorously deny liability and intend to move for summary judgment if the litigation proceeds. To prevail at trial, Plaintiff first would have to win his motion to certify a nationwide consumer class, overcoming Defendants' argument that individual inquiries are required to determine whether Class Members suffered any actual injury. In addition, Plaintiff would have to defeat a motion for summary judgment, maintain class certification through entry of judgment, and overcome numerous substantive defenses. Even if Plaintiff were to have certified a class and prevailed at trial, fairly allocating a trial judgment would have required some form of claims procedure to ensure adequate

compensation for Class Members who suffered the Power Defect or Overheating Issue on their Laptops, in contrast to those who those who used their Laptop throughout its useful life without incident. Through the Settlement, Class Members have the opportunity to achieve a certain recovery with the benefit of a consumer-friendly procedure supervised by an experienced Claim Administrator. The Court should enter the proposed Preliminary Approval Order.

## II. PROCEDURAL BACKGROUND

On May 4, 2018, Plaintiff Joseph Carlotti, through his counsel Gutride Safier LLP and Migliaccio & Rathod LLP, filed a Class Action Complaint in Alameda County Superior Court against Defendants alleging claims for violations of the breach of express warranty; breach of implied warranty; violation of the Magnuson-Moss Warranty Act; deceit and fraudulent concealment; unjust enrichment; violations of the California Consumer Legal Remedies Act, Civil Code § 1750, *et seq.*; false advertising under Business and Professions Code § 17500, *et seq.*; unfair business practices under California Business and Professions Code § 17200, *et seq.*; and seeking damages, an injunction, and other relief on behalf of himself and a proposed class of all purchasers of the Laptops (other than resellers) in the United States. (Dkt. 1.) Defendant ACI answered the complaint on June 7, 2018. After repeated unsuccessful attempts to serve ASUSTeK, a Taiwanese corporation, Plaintiff moved for and obtained an order permitting service by alternate means. (Dkt. 42.) Service of the summons and complaint on AUSTeK was effective as of February 27, 2019. (Dkt. 43.) The parties' stipulated to extend ASUSTeK's deadline answer to the complaint. (Dkt. 44.)

Plaintiff served ACI with discovery requests and noticed its deposition under Rule 30(b)(6) of Federal Rule of Civil Procedure. (Gutride Decl., ¶ 8.) ACI produced documents in response to Plaintiff's discovery requests, including documents providing sales and warranty data and hardware and software engineering reports. (Id.) According to the sales data ACI produced, Defendants sold approximately 24,800 Laptops, including 13,552 ASUS Rog Strix GL502VS laptops and 11,244

4

ASUS Rog Strix GL502VSK laptops. (Nafisi Decl., ¶ 19.) ACI deposed Plaintiff on November 14, 2018. (Gutride Decl., ¶ 10.)

On March 19, 2019, the Parties participated in an all-day mediation conducted by Martin Quinn, Esq. at JAMS in San Francisco, California, which resulted in the Parties agreeing on the material terms of a settlement. (Gutride Decl., ¶ 12.)

## III. TERMS OF THE PROPOSED SETTLEMENT

### A. The Settlement Class

The proposed Class consists of "all persons in the United States who purchased a new ASUS Rog Strix GL502VS or ASUS Rog Strix GL502VSK laptop computer from Defendants or an authorized ASUS retailer of Defendants between May 4, 2014 and the date Preliminary Approval is entered." Settlement at ¶ 2.12. Excluded from the Class are (a) the Honorable Magistrate Donna Ryu and any member of her immediate family; (b) any government entity; (c) Martin Quinn and any member of his immediate family; (d) Defendants; (e) any entity in which Defendants have a controlling interest; (f) any of Defendants' parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; (g) any person whose purchase of a Laptop was for resale purposes; (h) any person who timely opts out of the Settlement; (i) any person who received a full refund of a Laptop's entire purchase price from ASUS or a retailer in connection with the Power Defect, Overheating Issue, or heat-related issues alleged in the Lawsuit; (j) any person who received a replacement Laptop that did not suffer from the Power Defect or Overheating Issue; (k) any person who signed a release regarding their Laptop; and all persons who have filed a timely request for exclusion from the Class. Id.

### B. The Benefits Conferred on the Class Under the Settlement.

The Settlement provides for equitable relief and monetary relief with an estimated total settlement value of up to $11.9 million. (Nafisi Decl., ¶¶ 18-19.) The settlement benefits are further

5

explained, *infra*.

### 1.    The Extended Warranty.

Under the Settlement, ASUS has agreed to extend the warranty on all ASUS Rog Strix GL502VS laptops to cover all Qualifying Repairs until the latest of: (i) three years from the date of purchase; (ii) 90 days from Final Approval; or (iii) 180 days following the date ASUS replaced the internal power supply and/or power adaptor. As explained in the Settlement Agreement, Qualifying Repairs are those necessary to resolve the Power Defect. "Qualifying Repairs" means repairs to and/or replacement of the motherboard and/or AC power adapter to resolve the Power Defect. Each Class Member who purchased an ASUS Rog Strix GL502VS laptop is entitled to use the Extended Warranty regardless of whether the Class Member files a Claim for a Settlement Benefit. The entire cost of such Qualifying Repairs, including all costs associated with insured shipping of such Class Members' Laptops to Defendants and the return of the Laptops to Class Members, will be borne exclusively by Defendants. Given that 13,552 ASUS Rog Strix GL502VS laptops are eligible for Qualifying Repairs, which are conservatively valued at $500 per computer, this component of the Settlement alone is valued up to $6.7 million. (Nafisi Decl., ¶ 18.)

### 2.    Monetary Relief.

All Class Members, including those who are eligible for Qualifying Repairs under the Extended Warranty, are entitled to submit a Claim for monetary relief. The amount of the Settlement Benefits paid to Class Members does not depend on the number of claims submitted, the cost of notice or administration, the amount paid in costs or attorneys' fees, or any amounts paid to Plaintiff—all of which are borne by ASUS. Settlement Class Members that previously complained to Defendants about the Power Defect or Overheating Issue are in Group B and they will automatically receive a $210 Credit Certificate without the necessity of filing a claim. All other Settlement Class Members may submit a Claim to receive Settlement Benefits. Class Members will be entitled to

6

submit a claim under Group A, B, or C, as those groups are defined in the Settlement Agreement. Settlement Class Members who submit a claim under Group A have the option to select either a $110 Cash Payment or a $210 Credit Certificate, which is freely transferable, stackable, and is valid for at least two years. Settlement Class Members who do not submit a claim under Group A shall have the option to submit a Claim under Group C to select either a $105 Credit Certificate or a $55 Cash Payment. If a Class Member files a claim under Group B, he or she can elect to receive a $110 Cash Payment instead of the $210 Credit Certificate. Given that approximately 24,800 Laptops were sold during the Class Period, the monetary Settlement Benefits described in this Section are valued at as much as $5,200,000. (Nafasi Decl., ¶ 19.)

Assuming Plaintiff prevailed at trial, the Court could require an individualized damage prove-up, necessitating that Class Members come forward to establish whether or not they ultimately suffered any damages depending on (1) whether they experienced the alleged issues in or out of warranty, and (2) whether Defendants' warranty adjustments made the Class Member whole. In this scenario, a victory at trial could likely be pyrrhic. In contrast, the claims procedure under the Settlement offers recovery for consumers who make minimal effort to submit a claim under Group A, B, or C.

### 3. Payment of Administrative Expenses, Attorneys' Fees and Costs, Representative Service Awards.

All costs of notice and administration of the Settlement will be paid by Defendants. (Settlement Agreement, ¶ 7.2(s).) These costs are reasonable in light of the need to reach all Class Members and process the claims. The parties propose that Angeion Group serve as the Claims Administrator. The additional information required by the N.D. Cal. Guidelines ¶ 2 regarding the selection of the settlement administrator is provided in the Gutride Declaration. (Gutride Decl., ¶ 36.)

In addition, subject to the Court's approval and after the Class is notified and has the opportunity to object, Plaintiff intends to request, and Defendants will not oppose, an Incentive Award to Plaintiff of $5,000. (Settlement Agreement at ¶ 7.1.) The Incentive Award is designed to compensate Plaintiff for: (1) the time and effort undertaken in and risks of pursuing this action (including the risk of liability for the costs of suit) and (2) because he is agreeing to a release broader than the one that will bind Settlement Class Members. (Gutride Decl., ¶ 35; and Settlement Agreement, Ex. E.) Plaintiff spent substantial time on this action, has assisted with the investigation of this action and the drafting of the complaint, has been in contact with counsel frequently, has prepared for, traveled to, and participated in a deposition, and has stayed informed of the status of this action, including settlement. (*See* Gutride Decl., ¶ 35.)

Plaintiff's Counsel will also request, and Defendants will not oppose, Attorneys' Fees and Expenses of $787,500. (Settlement Agreement, ¶ 8.1.) The Parties negotiated and reached agreement regarding fees and costs only after agreeing to all material terms of the Settlement. (Gutride Decl., ¶ 18.) Plaintiff's Counsel's request is subject to this Court's approval and will serve to compensate them for the time, risk and expense Plaintiff's Counsel incurred pursuing claims on behalf of the Class Members. The reasonableness of this request is discussed in Section VII, *infra*.

### 4. The Release of Settlement Class Members' Claims.

In exchange for these Settlement Benefits, each Settlement Class Member shall fully release Defendants from the Released Claims, as further set forth in the Settlement Agreement. The Released Claims will also include those which could have been asserted in this Litigation.

### C. The Proposed Notice Plan Under the Settlement.

Notice of the Settlement is to be provided to the Class as follows: (1) via direct Email Notice to those Class Members for whom an email address is available; (2) direct Postcard Notice mailed to those Class Members for whom a physical mailing address is available but an email address is not

8

available; (3) Published Notice in People magazine and USA Today and distribution of a press release; (4) publication of Online Notice targeted at likely Class Members served across relevant internet websites and social media platforms; (5) publication of Online Notice on Defendants' websites and social media platforms; and (6) publication of the Long Form Notice on a Settlement Website, located at www.asuslaptopsettlement.com. (*See* Settlement Agreement, Exhs. B1 through B5.) The proposed notices each inform Class Members about the proposed Settlement; provide a summary of the Settlement Benefits; state the need to file a Claim; advise Class Members of their right to opt out and provide the information required by N.D. Cal. Guidelines ¶ 4 regarding opt outs; advise Class Members of their right to object and provide the information required by N.D. Cal. Guidelines ¶ 5 regarding objections; and inform Class Members regarding the prospective request for Attorneys' Fees and Expenses and an Incentive Award. (Id.) The notices refer Class Members to the Settlement Website where they can obtain the Long Form Notice, which provides more details about the Litigation and the Settlement, online and printable versions of the Claim Form and the opt out forms, a fuller discussion of the release, and methods to obtain additional information. (Id.) In addition, the Settlement Website will also contain a contact information page that will include addresses and telephone numbers for the Claim Administrator and Plaintiff's Counsel, the Settlement Agreement, the date of the Final Approval Hearing, the motion for approval of the Settlement, the request for Attorneys' Fees and Expenses and an Incentive Award, and other important documents in the Litigation. Further, the Claim Administrator will provide a toll-free telephone number through which Class Members can obtain information. (Id.)

As explained in the declaration from the Claim Administrator filed herewith, this multi-communication method is expected to reach at 76.75% of the Target Audience with an average frequency of 3.03 times each, and it is the best notice practicable. (Weisbrot Decl., ¶¶ 22-23.)

MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 18-CV-03369-DMR

Additionally, within ten (10) days of entry of the Preliminary Approval Order, the Claim Administrator shall serve notice of this Settlement to appropriate state and federal officials under the Class Action Fairness Act, 28 U.S.C. § 1715. The Claim Administrator shall draft and prepare the notice in conformity with 28 U.S.C. § 1715 and for identifying the appropriate state and federal officials to be notified.

## IV. THE COURT SHOULD APPROVE THE SETTLEMENT.

### A. Legal Framework.

Strong judicial policy favors settlement of class actions. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1269, 1276 (9th Cir. 1992); *Linney v. Cellular Alaska P'ship, 151 F.3d 1234*, 1238 (9th Cir. 1998). Settlement of complex cases greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of justice. "The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). A decision "to approve or reject a settlement is committed to the sound discretion of the trial judge because [s]he is exposed to the litigants, and their strategies, positions, and proof." *In re Mego Fin. Corp*, 213 F. 3d 454, 458 (9th Cir. 2000). Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1101, 1026 (9th Cir. 1998) ("*Hanlon*"). Under Ninth Circuit precedent, the district court must balance a number of factors including:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* Recent amendments to Rule 23 similarly require the district court to consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

10

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Court should apply "the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045, at *13 (N.D. Cal. Dec. 17, 2018).

**B.      The Settlement Is Fair, Adequate, and Reasonable.**

**1.      Procedural Concerns.**

The Court must consider whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)-(B). As the Advisory Committee notes suggest, these are "matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A)-(B) advisory committee's note to 2018 amendment. These concerns implicate factors such as the non-collusive nature of the negotiations, as well as the extent of discovery completed and stage of the proceedings. *See Hanlon*, 150 F.3d at 1026.

**a.      Adequate Representation of the Class.**

As discussed more fully in Section C6, *supra*, Plaintiff has no conflicts of interest with the Class and has invested significant time and resources in this Litigation. Plaintiff's Counsel has successfully represented numerous plaintiff classes, involving a variety of claims, in state and federal courts throughout the country and effectively represented the class interests in this case.

### b.    Arm's Length Negotiations.

The Ninth Circuit "put[s] a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Class settlements are presumed fair when they are reached "following sufficient discovery and genuine arms-length negotiation," both of which occurred here. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("*DIRECTV*"); 4 Newberg at § 11.24. "The extent of discovery [also] may be relevant in determining the adequacy of the parties' knowledge of the case." *DIRECTV*, 221 F.R.D. at 527 (quoting *Manual for Complex Litigation, Third* § 30.42 (1995)). "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *DIRECTV*, 221 F.R.D. at 527 (quoting 5 *Moore's Federal Practice*, §23.85[2][e] (Matthew Bender 3d ed.)).

Before agreeing upon the terms of the Settlement, the Parties conducted a thorough examination and investigation of the facts and law relating to the matters in the Litigation. Such investigation and discovery included the retention and consultation of an electrical engineering expert by Plaintiff's Counsel, requesting and receiving written discovery responses from ACI, examining Defendants' documents, and questioning Defendants about their documents. Gutride Decl., ¶¶ 7-9. Further, Defendants deposed Plaintiff. *Id.*, ¶ 10. Among other things, Plaintiff received extensive information relating to Defendants' sales and warranty data and hardware and software engineering reports for the Laptops. *Id.*, ¶ 9.

Further, the Parties negotiated the proposed settlement in good faith with the assistance of an independent, experienced mediator, Martin Quinn, Esq. at JAMS in San Francisco, California. Gutride Decl., ¶ 12. "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007).

## 2. Substantive Issues.

Rule 23(e)(2)(C) and (D) set forth factors for conducting "a 'substantive' review of the terms of the proposed settlement." Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018 amendment. In determining whether "the relief provided for the class is adequate," the Court must consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). In addition, the Court must consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

### c. Strength of Plaintiff's Case and Risks of Continued Litigation.

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotations omitted). The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.,* 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 9448, 965 (9th Cir. 2009)).

Here, as set forth in the Gutride and Nafisi declarations, Plaintiff's Counsel engaged in arms' length negotiations with Defendants' counsel, and Plaintiff's Counsel was thoroughly familiar with the applicable facts, legal theories, and defenses on both sides. Gutride Decl., ¶¶ 7-12; Nafisi Decl., ¶¶ 2-3, 13. Although Plaintiff and Plaintiff's Counsel had confidence in Plaintiff's claims, a favorable outcome was not assured. Gutride Decl., ¶¶ 19-20. They also recognize that they would face risks at class certification, summary judgment, and trial. *Id.* Defendants vigorously deny Plaintiff's allegations and assert that neither Plaintiff nor the Class suffered any harm or damages. In

13

addition, Defendants would no doubt present a vigorous defense at trial, and there is no assurance that the Class would prevail – or even if they did, that they would be able to obtain an award of damages significantly more than achieved here absent such risks. Thus, it is the belief of Plaintiff's Counsel that the proposed Settlement provides the Class with an outstanding opportunity to obtain significant relief at this stage in the Litigation. *Id.* The Settlement also abrogates the risks that might prevent the Class from obtaining any relief. *Id.*

As referenced above, proceeding in this Litigation in the absence of settlement poses various risks such as the potential inability to prove liability or damages on a class-wide or individual basis. For example, Defendants argued that GL502VS and GL502VSK Laptop models differed in material respects. Although ASUS conceded that it received some complaints from GL502VS Laptop purchasers about the Power Defect and Overheating Issue, ASUS claimed that it addressed the problem by designing the next model (the GL502VSK) with an upgraded power adapter and a different CPU and motherboard, which it claims resolved the issues identified by Plaintiff.

Thus, there may be difficulties establishing: (1) that all the Laptops uniformly experienced the Power Defect and Overheating Issues, (2) that Defendants' marketing materials were likely to deceive reasonable consumers, (3) that omissions in the marketing materials were material to reasonable consumers, (4) the amount of damages or restitution due to the class or to any class member, and (5) that common questions predominate over individual issues such that a class may be certified. Plaintiff and Plaintiff's Counsel, after taking into account the foregoing along with other risks and the costs of further litigation, are satisfied that the terms and conditions of this Agreement are fair, reasonable, adequate and equitable, and that a settlement of the Litigation and the prompt provision of effective relief to the Settlement Class are in the best interest of the Settlement Class Members. Gutride Decl., ¶ 20. These considerations have been found to weigh heavily in favor of settlement. *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.,* 2008 WL

14

4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

Moreover, even if Plaintiff prevailed at trial, in light of the possible damage theories that could be presented by both sides, there is a substantial likelihood that Class Members would not be awarded significantly more than is offered to them under this Settlement. For example, in *In re Apple Computer Sec. Litig.*, 1991 WL 238298, at *1 (N.D. Cal. Sept. 6 1991), the jury rendered a verdict for plaintiffs after an extended trial. Based on the jury's findings, recoverable damages would have exceeded $100 million. However, weeks later, Judge Ware overturned the verdict, entering judgment notwithstanding the verdict for the individual defendants, and ordered a new trial with respect to the corporate defendant. *Id.* By settling, Plaintiff and the Settlement Class avoid these risks, as well as the delays and the risks of the appellate process.

In addition to the risks of continuing the Litigation, Plaintiff would also face risks in certifying a class and maintaining class status through trial. Even assuming that the Court were to grant a motion for class certification, Defendant could still move to decertify the Class at any time. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted). From their prior experience, Plaintiff's Counsel expects that Defendants would likely appeal from a decision certifying the Class pursuant to Rule 23(f), and/or move for decertification at a later date. "[C]onsummating this Settlement promptly in order to provide effective relief to Plaintiff and the Class" eliminates these risks by ensuring Class Members a recovery that is certain and immediate. *Johnson v. Triple Leaf Tea Inc.,* 2015 WL 8943150, at *4 (N.D. Cal. Nov. 16, 2015).

MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 18-CV-03369-DMR

### d.    Effectiveness of Distribution Method.

The Court must consider "the effectiveness of [the] proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). Class Members who seek the Settlement Benefits for Group A or C must only to submit a relatively simple claim form with basic questions about class membership. Settlement Agreement, ¶ 6.1 and Exh. A. Class Members who qualify for Settlement Benefits under Group B are entitled to a Credit Certificate without submitting a Claim, although they may submit a Claim if they would prefer a Cash Payment. Settlement ¶ 6.1(b). The Claim Form can be completed online, or Class Members have the option to print and mail the Claim Form to the Claim Administrator. Settlement ¶ 6.5 and Exh. A. Payments will be made either electronically or by check and mailed. Settlement ¶ 6.7. This procedure is claimant-friendly, efficient, cost-effective, proportional and reasonable. Pursuant to N.D. Guidelines ¶1(g), Plaintiff's Counsel estimate, based on their experiences with recent settlements in other defective electronic cases and the input of the Claim Administrator, that between 3,000 and 4,000 Class Members will submit a Claim. Gutride Decl., ¶ 37; Nafisi Decl., ¶ 38.

### e.    Terms of Attorneys' Fees.

Plaintiff's Counsel seeks an award of $787,500.00 in attorneys' fees and costs. That request is addressed in Section VII, *infra*.

### f.    Supplemental Agreements.

There are no applicable "supplemental agreements" within the meaning of Rule 23(e)(3).

### g.    Equitable Treatment of Class Members.

Although the Settlement divides Class Members into groups, all Class Members are entitled to obtain relief based on the group for which that he or she qualifies. Membership in the groups is determined by: (i) whether the Class Member previously complained to Defendant about the Power Defect or an Overheating Issue (in which case he or she is a member of Group B); and (ii) the proof relating to the Class Member's Laptop purchase. In particular, Class Members are qualified to submit a claim under Group A if they (1) provide the Laptop's Serial Number and have registered the Laptop with Defendants prior to the Notice Date, as reflected by Defendants' records; (2) provide the Laptop's Serial Number and have purchased the Laptop from the ASUS Website; or (3)

16

submit a Laptop Proof of Purchase. All other Class Members may submit a Claim under Group C. The Settlement also provides for an Incentive Award for Plaintiff, which is explained in Section VII, *infra*.

This allocation plan treats all Class Members fairly based on the strength of their claims. The plan fairly protects the interest of all parties by directing relief to the Class Members who provide sufficient proof of their Laptop purchases, while also providing lesser settlement benefits to Class Members who submit a Claim without documentation. *See In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC (N.D. Cal. Mar. 28, 2019), ECF No. 526 at 4-5 (granting approval of settlement plan that pays a lower dollar amount in relation to the comparative weakness of certain claims). Because this plan will deter fraudulent claims and treat Class Members equitably relative to each other, it should be approved as fair, reasonable, and adequate.

### h.    Plaintiff's Counsel's Experience.

Although not articulated as a separate factor in Rule 23(e), courts have given considerable weight to the opinion of experienced and informed counsel who support settlement. *See DIRECTV*, 221 F.R.D. at 528; *see also In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA, 2008 WL 5382544 at *4 (N.D. Cal. Dec. 22, 2008); *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988). In deciding whether to approve a proposed settlement of a class action, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Stewart v. Applied Materials, Inc.*, No. 15-cv-02632-JST, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017); *accord Omnivision*, 559 F. Supp. 2d at 1043 (same). Deference to Plaintiff's Counsel's evaluation of the Settlement is proper because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967. Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation. *See* Gutride Decl., Ex. 2 and Nafisi Decl., Ex. 15 (firm resumes). Based on their experience, Plaintiff's Counsel concluded that the Settlement provides exceptional results for the Class while sparing the Class from the uncertainties of continued and protracted litigation.

**i.** **Past Distributions.**

The information requested by N.D. Cal. Guidelines ¶ 11 regarding past distributions in class settlements is provided in the Gutride Declaration. Gutride Decl., ¶ 37 and Ex. 14.

## V. THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS

The Class consists of "all persons in the United States who purchased a new ASUS Rog Strix GL502VS or ASUS Rog Strix GL502VSK laptop computer from Defendants or an authorized ASUS retailer of Defendants between May 4, 2014 and the date Preliminary Approval is entered." Settlement Agreement, at ¶ 2.12. Excluded from the Class are (a) the Honorable Magistrate Donna Ryu and any member of her immediate family; (b) any government entity; (c) Martin Quinn and any member of his immediate family; (d) Defendants; (e) any entity in which Defendants have a controlling interest; (f) any of Defendants' parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; (g) any person whose purchase of a Laptop was for resale purposes; (h) any person who timely opts out of the Settlement; (i) any person who received a full refund of a Laptop's entire purchase price from ASUS or a retailer in connection with the Power Defect, Overheating Issue, or heat-related issues alleged in the Lawsuit; (j) any person who received a replacement Laptop that did not suffer from the Power Defect or Overheating Issue; (k) any person who signed a release regarding their Laptop; and (l) all persons who have filed a timely request for exclusion from the Class . *See id.* This Court has not yet certified this case as a class action. For settlement purposes only, the Parties and their counsel request that the Court conditionally certify the Class.

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence. *Hanlon*, 150 F.3d at 1019. When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23. In assessing those class certification requirements, a court may consider that there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the

MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 18-CV-03369-DMR

proposal is that there be no trial.") For the reasons below, the Class meets the requirements of Rule 23(a) and (b).

### A.     The Settlement Class Satisfies Rule 23(a).

#### 1.     Rule 23(a)(1): Numerosity.

The first requirement for maintaining a class action is that its members are so numerous that joinder of all members would be "impracticable." *See* Fed. R. Civ. P. 23(a)(1). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21." *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal 2000). Here, the proposed Class consists of about 24,800 consumers. *See* Nafisi Decl. ¶ 19. Accordingly, numerosity is established.

#### 2.     Rule 23(a)(2): Commonality.

The second requirement of Rule 23 is the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is established if plaintiff's and class members' claims "depend on a common contention…capable of class-wide resolution . . . meaning that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Because the commonality requirement may be satisfied by a single common issue, it is easily met. 1 NEWBERG ON CLASS ACTIONS § 3.10, at 3-50 (1992).

Here, all of the Class Members' claims arise from a common nucleus of facts and are based on the same legal theories. Plaintiff alleges that the Laptops suffered from a common Power Defect and Overheating Issue and that Defendants uniformly misrepresented their Laptops by failing to disclose these material facts. Commonality is satisfied by the existence of these common factual issues. *See In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2016 U.S. Dist. LEXIS 179487, at *43 (N.D. Cal. Sep. 14, 2016) (commonality requirement met because Plaintiffs, who had purchased vehicles with eleven different versions of allegedly defective software over a three-year period, experienced common defects); *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D.

MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 18-CV-03369-DMR

439, 448 (N.D. Cal. 1994) (commonality requirement met by "the alleged existence of common discriminatory practices").

Second, Plaintiff's claims are brought under legal theories common to the Class as a whole. Alleging a common legal theory alone is enough to establish commonality. *See Hanlon*, 150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."). Here, all of the legal theories asserted by Plaintiff are common to all Class Members. Thus, commonality is satisfied.

### 3. Rule 23(a)(3): Typicality.

The third requirement of Rule 23(a) is that the claims of the representative plaintiff be "typical of the claims … of the class." *See* Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *See Hanlon*, 150 F.3d at 1020. In short, to meet the typicality requirement, the representative plaintiff simply must demonstrate that the members of the settlement class have the same or similar grievances. *Gen. Tel. Co. of the Southwest Falcon*, 457 U.S. 147, 161 (1982).

Plaintiff's claims are typical of those of the Class. Like those of the Class, his claims arise out of the alleged misrepresentations of the Laptops' performance and cooling capabilities. He therefore has precisely the same claims as the Class, and must satisfy the same elements for each of the claims. The named Plaintiff and all Class Members allegedly have been injured in the same way by the same course of conduct. Therefore, Plaintiff satisfies the typicality requirement.

### 4. Rule 23(a)(3): Adequacy.

The final requirement of Rule 23(a) requires that the representative plaintiff will "fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4). This requires only that a class member does not have interests that are antagonistic to the class. *Hanlon*, 150 F.3d at 1020. Adequacy is presumed where a fair settlement was negotiated at arm's-length. 2 *Newberg on Class Actions, supra,* § 11.28, 11-59.

Plaintiff's Counsel has vigorously and competently pursued the Class Members' claims. The arm's-length settlement negotiations that took place and the investigation they undertook demonstrate that Plaintiff and Plaintiff's Counsel adequately represent the Class. Moreover, the named Plaintiff and Plaintiff's Counsel have no conflicts of interests with the Class. Rather, the named Plaintiff, like each absent Class Member, has a strong interest in proving Defendants' common course of conduct, and obtaining redress. In pursuing this litigation, Plaintiff's Counsel, as well as the named Plaintiff, have advanced and will continue to advance and fully protect the common interests of all members of the Class. Plaintiff's Counsel have extensive experience and expertise in prosecuting complex class actions. Plaintiff's Counsel are active practitioners who are highly experienced in class action, product liability, and consumer fraud litigation. *See* Gutride Decl., Exh. 2 and Nafisi Decl., Ex. 15 (firm resumes). Accordingly, Rule 23(a)(4) is satisfied.

## B. Because Common Question of Fact or Law Predominate, the Class Satisfies Rule 23(b)(3).

In addition to meeting the prerequisites of Rule 23(a), Plaintiff must also meet one of the three requirements of Rule 23(b) to certify the proposed class. *See Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001). Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022.

### 1. Common Questions of Law and Fact Predominate Nationwide.

The proposed Class is well-suited for certification under Rule 23(b)(3) because questions common to the Class Members predominate over questions affecting only individual Class Members. Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022. As the Supreme Court has explained, when addressing the propriety of certification of a

21

settlement class, courts consider the fact that a trial will be unnecessary and that manageability, therefore, is not an issue. *Amchem*, 521 U.S. at 620.

In this case, common questions of law and fact exist and predominate over any individual questions, including (in addition to whether this settlement is reasonable (*see Hanlon*, 150 F.3d at 1026-27)), *inter alia*: (1) whether Defendants' representations regarding the Laptops were false and misleading or reasonably likely to deceive consumers; (2) whether Defendants violated the FAL, CLRA, or the UCL; (3) whether Defendants breached an express or implied warranty; (4) whether Defendants defrauded Plaintiff and the Class Members; (6) whether Defendants were unjustly enriched; and (6) whether Plaintiff and the Class have been injured by the wrongs complained of, and if so, whether Plaintiff and the Class are entitled to damages, injunctive and/or other equitable relief, including restitution or disgorgement, and if so, the nature and amount of such relief.

## 2. A Class Action Is the Superior Mechanism For Adjudicating This Dispute.

The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class Members. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to show Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudications, economy of scale, and comprehensive supervision by a single court.

Moreover, since this action will now settle, the Court need not consider issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would

22

present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."). Accordingly, common questions predominate and a class action is the superior method of adjudicating this controversy.

### C.    The Class Also Satisfies Rule 23(b)(2)

The proposed class is also well suited for certification under Rule 23(b)(2). *See gen. Lilly v. Jamba Juice Co.*, 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) (granting preliminary approval of a Rule 23(b)(2) class of smoothie kit purchasers); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011) (explaining that the district court may certify a Rule 23(b)(2) class and a separate Rule 23(b)(3) class). As discussed above, the Settlement provides injunctive relief in the form of the Extended Warranty for purchasers of the Rog Strix GL502VS Laptop.

## VI.    THE PROPOSED NOTICE PROGRAM CONSTITUTES ADEQUATE NOTICE UNDER RULE 23 AND SHOULD BE APPROVED.

Upon preliminary approval, notice must be directed to class members. For class actions certified under Rule 23(b)(3), including settlement classes like this one, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition, Rule 23(e)(1) applies to any class settlement and requires the Court to "direct notice in a reasonable manner to all class members who would be bound by a proposal." Fed. R. Civ. P. 23(e)(1).

When a court is presented with class notice pursuant to a settlement, both the class certification notice and notice of settlement may be combined in the same notice. MANUAL FOR COMPLEX LITIGATION, § 21.633 at 321-22 ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined."). This notice allows class members to decide whether to opt out of or take part in the class and/or to object to the settlement and argue against final approval by the Court. *Id.* The proposed notice program here informs the Class of their rights and includes a

23

comprehensive plan for direct notice (via Email Notice and Postcard Notice for those Class Members for whom Defendants have contact information), Published Notice, Online Notice, and a Settlement Website, and constitutes the best notice practicable under the circumstances. *See gen.* Settlement Agreement. ¶¶ 5.1-5.7.

The Class Notice accurately informs Class Members of the salient terms of the Settlement, the Class to be certified, the date and location of the Final Approval Hearing, and the rights of all parties, including the rights of Class Members to file objections and to opt out of the Class. Additionally, the Class Notice provides information on how Class Members can object and opt out of the Class and to send those objections to the Court, information on how Class Members may access the case docket through the Court's Public Access to Court Electronic Records ("PACER"), and the contact information of Plaintiff's Counsel. The Parties in this case have created and agreed to perform the following forms of notice, which will satisfy both the substantive and manner of distribution requirements of Rule 23 and due process. *See* Settlement Exs. B1-B5; Weisbrot Decl., ¶ 9.

Accordingly, Plaintiff respectfully requests that this Court approve the notice program outlined in the Settlement Agreement.

## VII. APPROVAL OF THE ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARD.

### A. Plaintiff's Counsel's Fee Request is Reasonable Under the Lodestar Approach.

#### 1. Legal Standard.

Plaintiff requests the payment of Attorneys' Fees and Expenses in the amount of $787,500.00, which is provided for in the Settlement Agreement separate and apart from the money made available to the class for purposes of claims payment and notice and administration expenses. Under Ninth Circuit standards, it is appropriate for a District Court to analyze an attorneys' fee request and issue an award either based on (1) the "lodestar" method or (2) by making an award as a percentage

24

of the total benefit made available to the settlement class, including costs, fees, and injunctive relief. *See e.g., Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); *Nwabueze v. AT&T, Inc.*, No. C 09-01529 SI, 2014 WL 324262, at *2-3 (N.D. Cal. Jan. 29, 2014); *Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 WL 10483569, at *11-12 (E.D. Cal. Sept. 2, 2011). Plaintiff's fee request is reasonable under either of these approaches. Further, an attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted). To support an expense award, plaintiff should file an itemized list of their expenses by category, listing the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable. *See Wren v. RGIS Inventory Specialists*, No. 06-cv-05778-JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011); N.D. Cal. Guidelines ¶ 6.

2.   **Plaintiff's Counsel's Requested Fee Is Reasonable When Using The Lodestar Approach.**

Under the lodestar approach, "[t]he lodestar (or touchstone) is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 26 (2000); *see also Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community.'") (alteration in original) (internal citation omitted) (quoting *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 551 (2010)). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained and the contingent risk presented." *Lealao*, 82 Cal. App. 4th at 26; *see also Serrano v. Priest*, 20 Cal. 3d 25, 48-49 (1977); *Ramos v. Countrywide Home Loans*, Inc. 82 Cal. App. 4th 615, 622 (2000); *Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407,

1418 (1991) (multipliers are used to compensate counsel for the risk of loss, and to encourage counsel to undertake actions that benefit the public interest).

Plaintiff's Counsel's lodestar through the date of this motion is approximately $605,447.25. Gutride Decl., ¶¶ 23-25, 30-31; Nafisi Decl., ¶¶ 27-33. Plaintiff's Counsel's efforts to date included, without limitation:

•Significant pre-filing investigation;

•Drafting and filing a class action complaint;

•Drafting and filing case management conference statements and case management stipulations;

•Meeting-and-conferring with Defendants' counsel regarding the scope of discovery, the sufficiency of discovery responses and production, the retention of electronic documents, Defendants' searches for electronically stored information, the terms and scope of a stipulated protective order, the terms and scope of a stipulated electronically stored information order, and the timing of production;

•Reviewing documents produced by ACI;

•Preparing a notice of deposition of ACI pursuant to Rule 30(b)(6);

•Defending the deposition of Plaintiff;

•Drafting a comprehensive mediation statement and participating in mediation before Mr. Quinn;

•Negotiating and drafting the Settlement Agreement along with corresponding documents, including the claim form and notice forms;

•Drafting this motion for approval and supporting documents, including a proposed preliminary approval order and a proposed final judgment;

Gutride Decl., ¶¶ 2-12; Nafisi Decl., ¶¶ 2-15.

Before the Final Approval Hearing, Plaintiff's Counsel's efforts will also include, without limitation:

• Appearing at the Preliminary Approval Hearing;

• Reviewing and responding to correspondence from Class Members;

• Supervising the work of the Claim Administrator; and

• Researching and drafting a reply memorandum and opposing objections, if any.

Gutride Decl., ¶ 35; Nafisi Decl., ¶ 36.

Plaintiff's Counsel calculated their lodestar using their regular billing rates, which for the attorneys involved range from $550 to $1025 per hour. Gutride Decl., ¶¶ 23 -24; Nafisi Decl., ¶ 26. Plaintiff's Counsel are graduates of top law schools (including Yale, Harvard, and NYU), and the principal work was performed by lawyers with 10 or more years of experience.[2] Gutride Decl., ¶ 28. "Affidavits of the plaintiff'[s] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff'[s] attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). For attorneys and staff at the Gutride Safier firm, these hourly rates are equal to market rates in San Francisco for attorneys of Plaintiff's Counsel's background and experience. Gutride Decl., ¶¶ 26-29, Exhs. 3-12. For attorneys and staff at the Migliaccio & Rathod firm, these hourly rates are equal to market rates in Washington D.C. for attorneys of Plaintiff's Counsel's background and experience. Nafisi Decl., ¶ 26. Additionally, the

---

[2] Some of Plaintiff's Counsel also previously worked for top defense firms; had they remained at those firms their rates would be even higher than they are currently. Gutride Decl., ¶ 29. Furthermore, it is almost certain the rates paid by Defendant to its firms in this case are equal to or exceed the rates requested for Plaintiff's Counsel. *Id.*; *see also Managing Class Action Litigation: A Pocket Guide For Judges* § IV(F) (suggesting an examination of the defendant's attorney fee records as a measure of what might be reasonable.)

rates charged by Plaintiff's Counsel have been deemed reasonable in connection with the approval

their fee applications in at least seven recent matters. Gutride Decl., ¶ 26. Courts in other cases over

the past several years have also approved similar fees charged by other firms. *See In re Optical Disk*

*Drive Prod. Antitrust Litig.,* 2016 WL 7364803, at *8 (N.D. Cal. Dec. 19, 2016) (approving hourly

rates of $205 to $950); *Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL 2438274, at *5 (N.D. Cal.

May 21, 2015) (approving hourly rates of $475 to $975).[3]

These rates are the current rates charged by Plaintiff's Counsel, which is appropriate given

the deferred and contingent nature of counsel's compensation. *See LeBlanc-Sternberg v. Fletcher*,

143 F.3d 748, 764 (2nd Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in

order to compensate for the delay in payment….") (citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84

(1989)); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994)

("The district court has discretion to compensate delay in payment in one of two ways: (1) by

applying the attorneys' current rates to all hours billed during the course of litigation; or (2) by using

the attorneys' historical rates and adding a prime rate enhancement.").

The requested fee equates to a modest 1.28 multiplier, and possibly lower depending on how

much work Class Counsel performs prior to final settlement approval. This Court has discretion to

apply a multiplier to increase the fee award to account for various factors, including, *inter alia*, the

contingent nature of the fee award (both from the point of view of eventual victory on the merits and

the point of view of establishing eligibility for an award), the novelty and complexity of the

questions involved, the value of class benefits obtained, the efficiency and skill displayed by class

---

[3] Plaintiff's Counsel has also calculated their lodestar using the rates provided in the *Laffey* Matrix, which this Court has recognized is a "well-established objective source for rates that vary by experience." *In re HPL Techs., Inc., Sec. Litig.*, 366 F. Supp. 2d 912, 921 (N.D. Cal. 2005). After adjusting the rates, which are tailored for the District of Columbia, by approximately 8.6% for the Bay Area attorneys, as done by Judge Walker in *In re HPL Techs., Inc., Sec. Litig.*, Plaintiff's Counsel's total lodestar using the adjusted Laffey rates is $585,719.24. Gutride Decl., ¶¶ 30-31; Nafisi Decl., ¶¶ 27-33.

counsel, and the importance of other injunctive relief obtained. *See Serrano III*, 20 Cal. 3d at 49; *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001); *City of Oakland*, 203 Cal. App. 3d at 78; *Downey Cares v. Downey Community Dev. Comm'n*, 196 Cal. App. 3d 983 (1987), 995 n11; *see also Maria P. v. Riles*, 43 Cal. 3d 1281, 1294 n8 (1987); *Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311, (1983), 322; *Serrano v. Unruh* ("*Serrano IV*"), 32 Cal.3d 621, 625 n6 (1982). Each of these factors justifies a multiplier here.

First, Plaintiff's Counsel bore considerable risk in litigating this case wholly on a contingent basis and advancing all costs. Gutride Decl., ¶¶ 21-22. During the pendency of the Litigation, Plaintiff's Counsel turned away other work. Id. Since Plaintiff's Counsel's work is primarily focused on contingent-fee class action cases, it does not get paid in every case. Frequently, it gets nothing or is awarded fees equal to only a small percentage of the amount it had worked. Where a plaintiff's firm does succeed, therefore, it is appropriate to award a multiplier, to compensate for the risks the firm regularly undertakes. As the California Supreme Court has explained:

> [a] contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans. A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.

*Ketchum*, 24 Cal. 4th at 1132-33; *see also Cazares v. Saenz*, 208 Cal. App. 3d 279, 288 (1989) ("in theory, a contingent fee in a case with a 50 percent chance of success should be twice the amount of a non-contingent fee for the same case."). Indeed, in *In re Continental Illinois Securities Litigation*, 962 F.2d 566 (7th Cir. 1993), a federal appellate court reversed a fee award in a class action for, among other things, the trial court's refusal to enhance class counsel's lodestar for contingency risk. It explained, "The judge refused to award a risk multiplier—that is, to give the lawyers more than

their ordinary billing rates in order to reflect the risky character of their undertaking. This was error in a case in which the lawyers had no source of compensation for their services." *Id.* at 569. "[T]he failure to make any provision for risk of loss may result in systematic under-compensation of Plaintiff's counsel in a class action case, whereas we have said the only fee that counsel can obtain is, in the nature of the case, a contingent one." *Id.*

Second, Plaintiff's Counsel reached a settlement before class certification and thus should be rewarded for its efficiency (and the concomitant savings to the judicial system). In *Lealao*, the Court explained that, unless multipliers are provided when counsel agree to settle early, there will be "a disincentive to settle promptly inherent in the lodestar methodology. Considering that our Supreme Court has placed an extraordinarily high value on settlement, it would seem counsel should be rewarded, not punished, for helping to achieve that goal, as in federal courts." *Lealao*, 82 Cal. App. 4th at 52 (citing *Merola v. Atlantic Richfield Company*, 515 F.2d 165, 168 (3d Cir. 1975)) (lodestar-multiplier approach "permits the court to recognize and reward achievements of a particularly resourceful attorney who secures a substantial benefit for his clients with a minimum of time invested"); *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1282-1283 (S.D. Ohio 1996) (awarding a multiplier where case settled "in swift and efficient fashion"); *Arenson v. Board of Trade of City of Chicago*, 372 F. Supp. 1349, 1358 (N.D. Ill. 1974) (awarding a fee of four times the normal hourly rate on ground that, if the case had not settled and gone to verdict, "there is no doubt that the number of hours of lawyer's time expended would be more than quadruple the number of hours expended to date"). Similarly, in *Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819 (2001), the Court noted that "[t]he California cases appear to incorporate the 'results obtained' factor into the 'quality' factor: i.e., high-quality work may produce greater results in less time than would work of average quality, thus justifying a multiplier."

Third, as explained above, Plaintiff's Counsel achieved an excellent settlement in this Litigation. Should the Court reduce Plaintiff's Counsel's lodestar, the multiplier necessary to offset that reduction would fall well within the range commonly applied by California courts. For example, in *Wilson v. Airborne, Inc.*, 2008 WL 3854963 (C.D. Cal. Aug. 13, 2008), the court approved a multiplier of 2.0 in a false advertising class action brought on behalf of consumers. *Id.* at *12. Likewise, in *Sternwest Corp. v. Ash*, 183 Cal. App. 3d 74 (1986), the Court of Appeal remanded a case for a lodestar enhancement of "two, three, four or otherwise." *Id.* at 76. Another California court explicitly stated that "[m]ultipliers can range from two to four or even higher." *Wershba*, 91 Cal. App. 4th at 240 (citing *Coalition for L. A. County Planning etc. Interest v. Board of Supervisors*, 76 Cal. App. 3d 241, 251 (1977) (affirming a multiplier of 2) and *Arenson*, 372 F. Supp. at 1358 (awarding a fee four times the normal rate on ground that, if the case had not settled and gone to verdict, "there is no doubt that the number of hours of lawyer's time expended would be more than quadruple the number of hours expended to date")); *see also City of Oakland*, 203 Cal. App. 3d at 83 (affirming a 2.34 multiplier); *Glendora Community Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465, 479-80 (1984) (approving a multiplier of 12); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (granting a multiple of 3.65 and noting that multipliers of one to four are frequently awarded).

Finally, Plaintiff's Counsel will have to perform more work before the Settlement will become effective, including, communicating with Class Members, supervising the Claim Administrator, responding to objections, and opposing any appeals. Plaintiff's Counsel anticipates that there will be another 45-75 hours before this Settlement is entirely complete and an estimated 175-250 hours if this Court's judgment is appealed. Gutride Decl., ¶ 35; Nafisi Decl., ¶ 36. Should the Court award less than the maximum amount of fees, Plaintiff's Counsel reserves its right to seek

additional attorneys' fees for later-performed work in connection with this Settlement, up to a total of no more than $787,500 for fees and costs.

### 3. Plaintiff's Counsel's Requested Fee Is A Reasonable Percentage of the Total Benefit Made Available To the Class.

Whether as a cross-check or as an independent methodology, the Court can utilize the percentage-of-recovery method to verify that Plaintiff's attorneys' fee request is reasonable. *See e.g., Nwabueze*, 2014 WL 324262, at *2-3. If "classwide benefits are not easily monetized, a cross-check is entirely discretionary," and the district court may make its award based entirely on the lodestar. *Yamada*, 825 F.3d at 547–48 (explaining that *Bluetooth* stated that courts are "encouraged" but not required to cross-check a lodestar award).

When determining the value of the settlement, courts consider both the monetary and non-monetary benefits conferred under the settlement terms. *See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 972-74 (9th Cir. 2003); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal. 2011), aff'd, 473 F. App'x. 716 (9th Cir. 2012); *Browning*, 2007 WL 4105971, at *14. Finally, Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available to class members rather than the amount actually claimed. *Young v. Polo Retail, LLC*, No, C-02-4546 WRW, 2007 WL 951821, at *8 (N.D. Cal. Mar. 28, 2007) (citing *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) ("district court abused its discretion in basing attorney fee award on actual distribution to class" instead of amount being made available)); *see also Nwabueze*, 2014 WL 324262, at *3 (calculating overall value of settlement to be $100 million if all class members requested billing summaries provided in settlement); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007) ("The Ninth Circuit has held, however, that the district court must award fees as a percentage of the entire fund, or pursuant to the lodestar method, not on the basis of the amount of the fund actually claimed by the class.") (citing *Williams*), aff'd, 331 F. App'x 452 (9th Cir. 2009); *Dennings v. Clearwire Corp.*, No. C10-

32

1859JLR, 2013 WL 1858797, at *7 (W.D. Wash. May 3, 2013) ("Under Ninth Circuit law, there is strong support that, when a court conducts a percentage fee analysis, it is the amount or value made available to the class, not the amount actually claimed, that is relevant.") (citing *Williams and Stern v. Gambello*, 480 F. App'x 867, 870 (9th Cir.2012)) aff'd (Sept. 9, 2013).

In the Ninth Circuit, the benchmark for an attorney fee is 25% of the total settlement value, including the monetary and non-monetary recovery. *See Six Mexican Workers v. Arizona Citrus Workers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *see also Glass*, 2007 WL 221862, at *14 ("The Ninth Circuit has repeatedly held that 25% of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage method . . ."). However, many cases have found that between 30% and 50% of the common fund is an appropriate range when the settlement fund is less than ten million. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297-98 (N.D. Cal. 1995) (collecting cases); *see also Johnson v. Gen. Mills, Inc.*, 2013 WL 3213832, at *6 (C.D. Cal. June 17, 2013) (awarding a fee award of 30% of the settlement fund).

Here, the value of the monetary portion of the Settlement Benefits made available to the Settlement Class is between $2.77 million and $5.20 million. Nafisi Decl., ¶ 19. In addition, Plaintiff estimates that the value of the injunctive relief portion of the Settlement, e.g., the Extended Warranty, is up to $6.7 million. Id., ¶ 18.[4] Thus, the requested attorneys' fee of $773,728.67 (which is $787,500 less $13,771.33 in costs, discussed *infra*) is only approximately 6.4-9.5% of the total settlement value, which is estimated at between $8.13 million and $11.97 million. Id., ¶¶ 18-19. And even examining solely the potential monetary relief made available to the Class of $5.20 million, the

---

[4] The Court "need not determine the 'value' of particular injunctive relief." *In re Ferrero Litig.*, 583 F. App'x 665, 668 (9th Cir. 2014); *see also Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 924 (9th Cir.), vacated on other grounds, 772 F.3d 608 (9th Cir. 2014). However, even where the value of the injunctive relief cannot be "accurately ascertained," the district court still "should consider the value of the injunctive relief as a 'relevant circumstance'" in its fee determination. *Staton*, 327 F.3d at 974 (quoting *Vizcaino*, 290 F.3d at 1049).

requested fee still comes in well below the benchmark, at 14.8%. It is entirely appropriate to award the requested fess where, as here, Plaintiff's Counsel is seeking fees well below the 25% benchmark, no matter how it is calculated.

Plaintiff's Counsel requests that, in addition to reasonable attorneys' fees, the Court grant its application for reimbursement of $13,771.33 in out-of-pocket expenses incurred by it in connection with the prosecution of this litigation. Gutride Decl., ¶¶ 32-33; Ex. 13; Nafisi Decl. ¶ 34. Plaintiff's Counsel is typically entitled to reimbursement of all reasonable out-of-pocket expenses and costs in prosecution of the claims and in obtaining a settlement. *See Vincent v. Hughes Air West*, 557 F.2d 759, 769 (9th Cir. 1977). As required by the N.D. Cal. Guide ¶ 6, the expenses incurred are itemized in counsel's declarations. Gutride Decl., ¶ 32 and Ex. 13; Nafisi Decl., ¶ 34. Here, since the requested sum of $787,500 is inclusive of both attorneys' fees *and* costs, should the Court choose to calculate the two totals separately, it should subtract the $13,771.33 in costs from that number and award $773,728.67 in attorneys' fees.[5]

### B. APPROVAL OF THE CLASS REPRESENTATIVE'S INCENTIVE AWARD.

This Court should also approve a $5,000 Incentive Award to Plaintiff as it is just, fair and reasonable. In deciding whether to approve such an award, a court should consider: "(1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulty encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995); *see also* N.D. Cal. Guidelines ¶ 7. Further, as

---

[5] Should the Court deem any of the requested costs to not be reimbursable, Plaintiff requests that the Court increase the attorneys' fee award such that the net amount of $787,500 in Attorneys' Fees and Costs provided via the Settlement Agreement is awarded.

MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 18-CV-03369-DMR

a matter of public policy, representative service awards are necessary to encourage consumers to formally challenge perceived false advertising and unfair business practices.

Plaintiff took on substantial risk, most importantly the risk of publicity and notoriety. Gutride Decl., ¶ 35. Plaintiff also searched his personal records for responsive documents and attended his deposition. *Id.*; Nafisi Decl., ¶ 35. Plaintiff also remained actively involved in the Litigation prior to and after settlement. *Id.* Finally, Plaintiff agreed to a broader general release than the release applicable to the other Settlement Class Members. *See* Settlement, Ex. E.

The proposed Incentive Award is reasonable in light of Plaintiff's efforts and the relief to the Class resulting from this Litigation. *See* Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303, 1333 (2006) (an empirical study of incentive awards to class action plaintiffs has determined that the average aggregate incentive award within a consumer class action case is $29,055.20, and that the average individual award is $6,358.80.); *see also Mego*, 213 F.3d at 463 (awarding the named plaintiff $5,000 involving a class of 5,400 people and a total recovery of $1.725 million); *Smith v. CRST Van Expedited, Inc.*, 2013 WL 163293, *6 (S.D. Cal. Jan. 14, 2013) (finding the amount of the incentive payments requested, $15,000, is well within the range awarded in similar cases); *Embry v. Acer America Corp.*, Dkt.# 218 (N.D. Cal. Feb. 14, 2012) (awarding $15,000 incentive award); *Gibson & Co. Ins. Brokers, Inc. v. Jackson Nat. Life Ins. Co.*, 2008 WL 618893 (C.D. Cal. Feb. 27, 2008) (awarding $5,000 incentive fee); *Mendoza v. Hyundai Motor Co.*, No. 15-cv-01685-BLF, 2017 WL 34059, at *15 (N.D. Cal. Jan 23, 2017) ("$5,000 is presumptively reasonable.") (citations omitted).

**VIII.    THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE**

The last step in the settlement approval process is the Final Approval Hearing at which the Parties will seek final approval of the proposed Settlement. At the Final Approval Hearing, proponents of the Settlement may explain and describe its terms and conditions and offer argument in support of final approval of the Settlement. Also, Class Members, or their counsel, may be heard in support of or in opposition to final approval of the Settlement. Plaintiff requests the Court issue a schedule establishing dates for mailing notices, submitting timely exclusions, and for the Final Approval Hearing.

**IX.    CONCLUSION**

For the foregoing reasons, Plaintiff and Plaintiff's Counsel respectfully request that the Court: (1) grant preliminary approval of the Settlement; (2) conditionally certify the Class for settlement purposes only, designate Plaintiff as Class Representative, and appoint Migliaccio & Rathod LLP and Gutride Safier LLP as Plaintiff's Counsel; (3) appoint Angeion Group as the Claim Administrator and establish procedures for giving Class Notice to members of the Class; (4) approve forms of notice to Class Members; (5) mandate procedures and deadlines for exclusion requests and objections; and (6) set a date, time and place for the Final Approval Hearing.

MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 18-CV-03369-DMR

Dated: July 8, 2019

Respectfully submitted,


*/s/ Marie A. McCrary             /*
**GUTRIDE SAFIER LLP**
Adam J. Gutride (State Bar No. 181446)
Seth A. Safier (State Bar No. 197427)
Marie A. McCrary (State Bar No. 262670)
100 Pine St., Suite 1250
San Francisco, California 94111
Telephone: (415) 271-6469
Facsimile: (415) 449-6469

Stephen M. Raab (appearing *pro hac vice*)
113 Cherry Street, #55150
Seattle, WA 98140-2205
Telephone: (415) 639-9090 x109

**MIGLIACCIO & RATHOD LLP**
Esfand Nafisi (State Bar No. 320119)
Nicholas Migliaccio, (appearing *pro hac vice*)
Jason Rathod (appearing *pro hac vice*)
412 H Street NE, Suite 302
Washington, D.C. 20002

Attorneys for Plaintiff