**GUTRIDE SAFIER LLP**
Adam J. Gutride (State Bar No. 181446)
Seth A. Safier (State Bar No. 197427)
Marie A. McCrary (State Bar No. 262670)
100 Pine St., Suite 1250
San Francisco, California 94111
Telephone: (415) 271-6469
Facsimile: (415) 449-6469

Stephen M. Raab (appearing *pro hac vice*)
113 Cherry Street, #55150
Seattle, WA 98140-2205
Telephone: (415) 639-9090 x109

**MIGLIACCIO & RATHOD LLP**
Nicholas Migliaccio, (appearing *pro hac vice*)
Jason Rathod (appearing *pro hac vice*)
Esfand Nafisi (State Bar No. 320119)
412 H Street NE, Suite 302
Washington, D.C. 20002

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH CARLOTTI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ASUS COMPUTER INTERNATIONAL; ASUSTEK COMPUTER INC., and DOES 1-50,<br><br>Defendants. | CASE NO. 18-CV-03369-DMR<br><br>**DECLARATION OF ADAM GUTRIDE IN SUPPORT OF PLAINTIFF'S MOTION FOR APPROVAL OF CLASS SETTLEMENT, PROVISIONAL CERTIFICATION OF NATIONWIDE SETTLEMENT CLASS, AND APPROVAL OF PROCEDURE FOR AND FORM OF NOTICE TO SETTLEMENT CLASS**<br><br>Date:      August 22, 2019<br>Time:      1:00 p.m.<br>Courtroom:  7, 19th Floor<br>Judge:     Hon. Donna M. Ryu |

1    I, Adam Gutride, declare and state that:

2    1.    I am an attorney licensed to practice law in the State of California and in this Court, and a

3    partner in Gutride Safier LLP ("GSLLP"). My firm, along with the firm of Migliaccio & Rathod

4    LLP ("M&R"), is counsel of record for Plaintiff Joseph Carlotti in the above captioned matter

5    against Defendant ASUSTeK Computer Inc. ("ASUSTeK") and ASUS Computer International

6    ("ACI") (collectively, "ASUS" or "Defendants"). I submit this declaration in support of Plaintiff's

7    Motion for Approval of Class Settlement, Provisional Certification of Nationwide Settlement Class,

8    and Approval of Procedure For and Form of Notice to Settlement Class. Unless otherwise noted, I

9    have personal knowledge of the facts set forth in this declaration and could and would testify

10   competently to them if called upon to do so. I discuss, in the following order, (a) the history of this

11   litigation, which includes a summary description of the legal services provided by GSLLP in this

12   litigation to date; (b) evaluation of the proposed settlement; (c) the risks borne by GSLLP; (d) the

13   lodestar of GSLLP; (e) GSLLP's continuing obligations in this litigation and under the Settlement

14   Agreement, a true and correct copy of which is attached hereto as **Exhibit 1**;[1] (f) the Service Award

15   for Plaintiff; and (g) the information required by N.D. Cal. Procedural Guidance for Class Action

16   Settlements.

17   **A.    History of This Litigation**

18   2.    On May 4, 2018, Plaintiff, through his counsel GSLLP and M&R, initiated this

19   litigation against Defendants by filing a Class Action Complaint in Alameda County Superior

20   Court. Plaintiff alleged that Defendants jointly designed, manufactured, marketed, warranted,

21   distributed and sold the ASUS ROG Strix GL502VS and GL502VSK laptops (collectively, the

22   "Laptops"). Plaintiff further alleged that Defendants marketed the Laptops as powerful, portable

23   machines ideal for gaming and video editing and represented that the Laptops' independent cooling

24   system "maximizes cooling efficiency" to give the Laptops "stability required for intense gaming

25   sessions." Plaintiff further alleged that the Laptops are not suitable for their ordinary and advertised

26   _____

[1] The capitalized terms used herein are defined in and have the same meaning as used in the
27   Settlement Agreement unless otherwise stated.

28

1   purpose of gaming and video editing because they uniformly suffer from a defect that causes the

2   Laptops' batteries to drain even when the Laptops are connected to, and drawing power from,

3   electrical outlets. Plaintiff also alleged that contrary to Defendants' marketing representations, the

4   Laptops' cooling system uses a unitary set of heatsinks to dissipate heat from the graphics

5   processing unit ("GPU") and computational processing unit ("CPU"). Plaintiff alleged that heat

6   generated by computationally or graphically demanding programs overloads the unitary cooling

7   system's ability to dissipate heat from the CPU and GPU and causes the Laptop to overheat to the

8   point of causing physical discomfort and/or diminishing the Laptops' performance and durability.

9   Plaintiff additionally alleged that Defendants failed to honor their warranties for the Laptops

10  because Defendants responded to requests for warranty repairs by replacing the Laptops' defective

11  components with identical and equally defective components.

12          3.          Plaintiff alleged claims for violations of the California Consumer Legal Remedies

13  Act, Civil Code § 1750, *et seq.*; the Magnuson-Moss Warranty Act, 15 U.S.C. 2301, *et seq.*; the

14  Song-Beverly Consumer Warranty Act, California Civil Code § 1790, *et seq.*; false advertising

15  under California Business and Professions Code § 17500, *et seq.*; and unfair business practices

16  under California Business and Professions Code § 17200 *et seq.*; breach of express warranty; breach

17  of implied warranty of merchantability; deceit and fraudulent concealment; and unjust enrichment,

18  and seeking damages, an injunction and other relief. Plaintiff sought to pursue these claims on

19  behalf of himself and all purchasers of the Laptops in the United States. Plaintiff sought an

20  injunction to prohibit the sale of the Laptops within a reasonable time after entry of judgment,

21  unless packaging and marketing is modified to remove the misrepresentations and to disclose the

22  omitted facts. Plaintiff also sought to recover, on behalf of the class of all purchasers, the dollar

23  amount of the "premium" price attributable to the alleged misrepresentations.

24          4.          GSLLP assisted with drafting and filling the Complaint against Defendants and

25  caused it to be served. GSLLP also undertook extensive pre-filing investigation, including without

26  limitation, researching, tracking, and analyzing Defendants' marketing, advertising, reviewing

27  documentation provide by Plaintiff and reviewing Defendants' websites and online documents.

28

GUTRIDE DECLARATION IN SUPPORT OF PLAINTIFF'S MOTION
FOR APPROVAL OF CLASS SETTLEMENT

1    5.    ACI timely removed the action to the Northern District of California on June 7,

2  2018. (Dkt. #1.) Further, ACI answered the complaint on June 7. (Id.)

3    6.    Because ASUSTeK is a Taiwanese corporation with its principal place of business in

4  Taiwan, GSLLP requested that its counsel accept service of the Summons and Complaint on its

5  behalf and sent a Notice of a Lawsuit and Request to Waive Service of a Summons to ASUSTeK,

6  by email to its counsel. GSLLP also arranged to have a clerk of the Court serve the Summons and

7  Complaint, and supplementary material, to ASUSTeK by depositing the documents at a FedEx

8  office on October 18, 2018. However, ASUSTek apparently refused delivery of the documents.

9  Despite repeated requests for ASUSTeK to accept or waive service, GSLLP was forced to draft and

10  file a motion for alternative method of service on ASUTek. (Dkt. #39.) The Court granted the

11  motion on February 11, 2019. (Dkt. # 42.) GSLLP proceeded with serving ASUSTek in compliance

12  with the Court's order. (Dkt. #43.)

13    7.    Throughout the case, GSLLP led met-and-confer efforts with Defendants' counsel

14  regarding general discovery matters, including the scope of discovery, the retention of electronic

15  documents, Defendants' searches for electronically stored information, the terms and scope of a

16  stipulated protective order, the terms and scope of a stipulated order regarding the production of

17  electronically stored information, and the timing of production and depositions.

18    8.    GSLLP assisted in drafting requests and reviewing Defendants' responses to requests

19  for production of documents and interrogatories. GSLLP also drafted electronic search terms and a

20  protocol so that Defendants could gather relevant electronically stored information. GSLLP also

21  drafted and served a deposition notice pursuant to Fed. R. 30(b)(6) on ACI.

22    9.    GSLLP reviewed all documents and information produced by Defendants, as well as

23  information counsel independently gathered, including ASUS sales data, marketing materials,

24  warranty documents, Defendants' internal communications, records of firmware updates, technical

25  analyses and proposed solutions such as  a motherboard component rework memorandum and

26  design, documents identifying components and issues with and expected failure rates of the

27  components, consumer complaint records, discussion board posts regarding the Laptops and their

28

3
GUTRIDE DECLARATION IN SUPPORT OF PLAINTIFF'S MOTION
FOR APPROVAL OF CLASS SETTLEMENT

1  issues, customer service protocols, communications with Plaintiff, and documents regarding repairs,

2  replacements, and refunds. GSLLP then developed follow-up inquiries to gather additional

3  information from Defendants on these key issues. GSLLP also assisted in consulting with an

4  electrical engineering expert about Defendants' documents and about Plaintiff's claims and

5  Defendants' defenses.

6         10.     GSLLP assisted in the preparation and defense of the deposition of Plaintiff, which

7  took place on November 14, 2018. GSLLP also assisted in Plaintiff's review of the deposition

8  transcript and the preparation of corrections to the same.

9         11.     GSLLP attended all case management conferences, assisted in drafting and filing the

10  case management statements for these events, and conferred with Defendants' counsel to prepare all

11  other stipulations between the parties.

12         12.     In connection with the settlement of this lawsuit, GSLLP prepared written settlement

13  proposals; drafted, negotiated, and revised proposed terms with Defendants' counsel before, during,

14  and after the mediation; reviewed documents and information provided by Defendants and

15  researched, developed, and refined settlement proposals in light of such information; researched

16  comparable settlements in other cases, drafted the mediation statement together with co-counsel;

17  attended the March 19, 2019 mediation before Martin Quinn, Esq. at JAMS in San Francisco,

18  California in person; drafted the final settlement agreement with input from co-counsel; drafted

19  class notice documents with input from co-counsel; and assisted with the preparation of the motion

20  for approval of settlement and documents in support.

21  **B.**      **Evaluation of the Proposed Settlement Agreement**

22         13.     A true and correct copy of GSLLP's resume is attached as **Exhibit 2**. As can be seen

23  from the resume, GSLLP has substantial experience in the litigation, certification, and settlement of

24  class action cases. Indeed, as is further detailed in the resume, GSLLP has been appointed as class

25  counsel in more than 25 consumer cases and has overseen more than a dozen large class action

26  settlements. Numerous judges in this District and other jurisdictions have commended GSLLP for

27  its vigorous and effective advocacy and for the results achieved to curb false advertising and to

28   

4

GUTRIDE DECLARATION IN SUPPORT OF PLAINTIFF'S MOTION
FOR APPROVAL OF CLASS SETTLEMENT

1    recover damages and obtain injunctive relief to benefit consumers. Some of these commendations

2    are recited in Exhibit 2.

3              14.      Based on my experience, Defendants' counsel are also highly experienced in this

4    type of litigation. It is thus my considered opinion that counsel for each side have fully evaluated

5    the strengths, weaknesses, and equities of the parties' respective positions and believe that the

6    proposed settlement fairly resolves their respective differences.

7              15.      This Litigation involved sharply opposed positions on several fundamental legal and

8    factual issues. Defendants argued, among other things, that: (a) Plaintiff could not identify any

9    actionable misrepresentation or omissions, as opposed to inactionable puffery, regarding the

10   Laptops; (b) Plaintiff lacked standing to assert claims related to the GL502VS Laptops (because he

11   purchased a GL502VSK Laptop); (c) there was no defect in the GL502VSK Laptops; (d) Plaintiff's

12   common law fraud claims are barred by California's economic loss rule; (e) there was no breach of

13   express warranty because the written warranty did not cover design defects, ASUS complied with

14   its warranty by replacing Plaintiff's laptop, and there was no other express warranty; (f) there was

15   no unfair or unlawful conduct; (g) Plaintiff could not certify a class because individualized

16   questions of materiality, reliance, and injury would predominate; and (h) Plaintiff and the Class

17   suffered no damages because the Laptops performed as well as, or better than, other laptops in the

18   market. In support of those arguments, Defendants argued that GL502VS and GL502VSK Laptop

19   models differed in material respects. ASUS conceded that it received some complaints from

20   GL502VS Laptop purchasers about the Power Defect and Overheating Issue, but ASUS claimed

21   that it addressed the problem by designing the next model (the GL502VSK) with an upgraded

22   power adapter and a different CPU and motherboard, which allegedly resolved the defects identified

23   by Plaintiff. ASUS claimed that the Power Defect and Overheating Issue only affected 2% of the

24   GL502VS laptops and .5% of the GL502VSK laptops.

25             16.      Plaintiff maintains that his claims are meritorious; that the Court would certify the

26   proposed class; that they would establish liability and recover substantial damages if the case

27   proceeded to trial; and that the final judgment recovered in favor of Plaintiff and Class would be

28
GUTRIDE DECLARATION IN SUPPORT OF PLAINTIFF'S MOTION
FOR APPROVAL OF CLASS SETTLEMENT

1    affirmed on an appeal. But Plaintiff's ultimate success would require him to prevail, in whole or in

2    part, at all of these junctures. Conversely, Defendants' success at any one of these junctures could

3    or would have spelled defeat for Plaintiff and the Settlement Class. Thus, continued litigation posed

4    significant risks and countless uncertainties, as well as the time, expense and delays associated with

5    trial and appellate proceedings.

6         17.    In the proposed settlement, Defendants have agreed to extend the warranty on all

7    ASUS Rog Strix GL502VS laptops to cover all Qualifying Repairs until the latest of: (i) three years

8    from the date of purchase; (ii) 90 days from Final Approval; or (iii) 180 days from the date of a

9    prior replacement of the internal power supply and/or power adaptor by ASUS. As explained in the

10   Settlement Agreement, Qualifying Repairs are those necessary to resolve the Power Defect.

11   "Qualifying Repairs" means repairs to and/or replacement of the motherboard and/or AC power

12   adaptors to resolve the Power Defect. Each Class Member who purchased an ASUS Rog Strix

13   GL502VS laptop shall be entitled to the Extended Warranty regardless of whether the Class

14   Member files a Claim for a Settlement Benefit per the terms of the Settlement Agreement. The

15   entire cost of such Qualifying Repairs, including all costs associated with insured shipping of such

16   Class Members' Laptops to ACI and the return of the Laptops to Class Members, will be borne

17   exclusively by Defendants. The term of the written warranty included with the Laptops was only

18   one year. Thus, in addition to the monetary relief provided by the Settlement, the Extended

19   Warranty is a signficant benefit to Settlement Class members that purchased GL502VS laptops.

20        18.    In addition to the Extended Warranty, Defendants have also agreed to provide

21   monetary relief to Settlement Class Members that experienced the Power Defect or Overheating

22   Issue. Relief will be provided to certain purchasers even without need for a claim form.  The

23   amount of the Settlement Benefits paid to Settlement Class Members does not depend on the

24   number of claims submitted, the cost of notice or administration, the amount paid in costs or

25   attorneys' fees, or any amounts paid to Plaintiff—all of which are borne by ASUS. The Settlement

26   Class Members that previously complained to Defendants about the Power Defect or Overheating

27   Issue do not need to file a Claim – they will automatically receive a $210 Credit Certificate unless

28

1    they wish to file a Claim under Group B to receive a $110 Cash Payment instead. All other

2    Settlement Class Members may submit a Claim to receive Settlement Benefits. Settlement Class

3    Members that provide proof that they purchased the Laptop, either by (1) providing the Laptop's

4    Serial Number and have registered the Laptop with Defendants prior to the Notice Date, as reflected

5    by Defendants' records; (2) providing the Laptop's Serial Number and have purchased the Laptop

6    from the ASUS Website; or (3) submitting a Laptop Proof of Purchase are entitled to file a Claim

7    under Group A to obtain either a $210 Credit Certificate or a $110 Cash Payment. All other

8    Settlement Class Members can file a claim under Group C and can obtain either a $105 Credit

9    Certificate or a $55 Cash Payment. The Parties negotiated and reached agreement regarding fees

10   and costs only after agreeing to all material terms of the Settlement.

11           19.     On the basis of my investigation into this case and experience with and knowledge of

12   the law and procedure governing the claims of Plaintiff and the Settlement Class, it is my belief that

13   it is in the best interest of the class to enter into this Settlement. Indeed, in light of the risks,

14   uncertainties and delays associated with continued litigation, the Settlement represents a significant

15   achievement by providing guaranteed benefits to class members in the form of an extended

16   warranty and direct cash compensation. Further, the allocation of benefits under the Settlement

17   treats all Class Members fairly based on the strength of their claims. The plan fairly protects the

18   interest of all parties by directing the most relief to Class Members who provide sufficient proof of

19   their Laptop purchases while also providing lesser settlement benefits to Class Members who

20   submit claim without documentation. Assuming Plaintiff prevailed at trial, Defendants still might be

21   able to assert defenses to individual recoveries, as contemplated by Ninth Circuit case law and the

22   Court could insist on a more onerous claims process than the one agreed in this settlement. For

23   example, the Court could require an individualized damage prove-up, necessitating that Class

24   Members come forward to prove that they purchased the Laptops and establish that they suffered

25   any damages depending on (1) whether they experienced the alleged issues in or out of warranty,

26   and (2) whether Defendants' warranty adjustments made the class whole. In sum, there was a

27   substantial risk that class members would recover only nominal damages, or nothing at all. Even in

28

1    the best case, it could take years to get relief for class members. The Settlement provides substantial

2    relief to the certified class without further delay.

3            20.    Plaintiff and GSLLP appropriately determined that the Settlement outweighs the

4    gamble of continued litigation. While I firmly believe in the merits of this litigation and that

5    Plaintiff would ultimately win at trial, I also believe that recovery is far from guaranteed and that

6    the benefits of settlement in this case outweigh the risks and uncertainties of continued litigation, as

7    well as the attendant time and expenses associated with possible interlocutory appellate review,

8    pretrial motion practice, trial, and final appellate review. After taking into account the foregoing

9    along with other risks and the costs of further litigation, I am satisfied that the terms and conditions

10   of this Agreement are fair, reasonable, adequate and equitable, and that a settlement of the

11   Litigation and the prompt provision of effective relief to the Settlement Class are in the best interest

12   of the Settlement Class Members.

13   **C.    The Risks Borne by GSLLP**

14           21.    In accepting this case, GSLLP bore considerable risk. GSLLP took this case on a

15   fully contingent basis, meaning that we were not paid for any of our time, and that we paid all costs

16   and out of pocket expenses without any reimbursement to date. During the pendency of this case,

17   GSLLP turned away other work. In evaluating the case at the outset, I concluded that there was a

18   significant possibility that the total amount of classwide damages we would recover would be

19   insufficient for GSLLP to be compensated for all the time it would expend, if GSLLP was limited to

20   recovering a percentage of those classwide damages. However, because the statutes under which

21   Plaintiff would be suing authorized fee-shifting to a prevailing plaintiff who achieved a benefit for

22   the class members/general public (a.k.a. "private attorney general fees"), I concluded that GSLLP

23   could accept the engagement. Further, I recognized that GSLLP would be contributing a substantial

24   amount of time and advancing significant costs in prosecuting a class action, with no guarantee of

25   compensation or recovery, in the hopes of prevailing against a well-funded defense. During the

26   course of the litigation, GSLLP turned away other cases due to its involvement with this matter.

27   Among these were cases that were subsequently filed by other firms.

28

GUTRIDE DECLARATION IN SUPPORT OF PLAINTIFF'S MOTION
FOR APPROVAL OF CLASS SETTLEMENT

22.    Because Defendants were represented by a large, highly-skilled and well-resourced litigation firm, there was increased risk that Plaintiff would not certify a class and/or receive a verdict for the defense after a prolonged trial.

**D.    Lodestar and Expenses for GSLLP**

23.    Throughout the duration of this litigation, GSLLP has maintained contemporaneous billing records for this case. Based on GSLLP's time records, GSLLP has spent approximately 395.85 hours prosecuting this litigation, although some timekeepers have not yet input time for the current month and their totals are current only through April 31, 2019. (Thus, this total does not include all work finalizing the settlement papers or the motion to approve and supporting declarations.) The total number of hours, as well as the lodestar computed at our 2019 rates, is shown in the following chart:

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Adam Gutride | 20.4 | $1025 | $20,910.00 |
| Seth Safier | 38.2 | $1025 | $39,155.00 |
| Marie McCrary | 109.5 | $900 | $98,550.00 |
| Todd Kennedy | 4.5 | $850 | $3,825.00 |
| Anthony Patek | 20.2 | $825 | $16,665.00 |
| Stephen Raab | 173.2 | $825 | $142,890.00 |
| Kristen Simplicio | 0.2 | $825 | $165.00 |
| Jessica Kagansky | 9.4 | $550 | $5,170.00 |
| Kyle Wilson | 2 | $450 | $900.00 |
| Ashley Garcia | 15 | $275 | $4,125.00 |
| Jennifer Gardner | 3.25 | $225 | $731.25 |
| **TOTAL** | **395.85** | | **$333,086.25** |

24.    The hourly rates shown for the attorneys and paralegals at GSLLP are the same as

the regular rates charged in 2019 for their services in other litigation. The persons shown above are all attorneys, except for Ashley Garcia and Jennifer Gardner, who are legal assistants.

25. I have reviewed the hours worked by the attorneys and legal assistants in this litigation and I estimate that our time can be divided as follows:

- Adam Gutride: *case initiation* (examining case theories and discussing in light of prior case law; reviewing and commenting on draft complaint) (4.3 hours); *case management and strategy* (including communicating with team and co-counsel regarding case strategy; supervising performance of junior attorneys) (3.3 hours); *discovery* (discussing high level findings) (1.2 hours); *settlement* (revising draft term sheets; discuss mediator selection; revise draft settlement agreement and supporting exhibits, including proposed class notice, claim form, and proposed orders; revise motion for approval of settlement and supporting documents; revising this declaration (11.6 hours). **Grand Total: 20.4 hours.**

- Seth Safier: *case initiation* (assisting in drafting the complaint; supervising filing of service of complaint and supporting documents) (6.6 hours); *case management and strategy* (including, assisting in drafting case management statements, attending case management conference, communicating with co-counsel regarding case strategy, deadlines, and tasks, communicating with opposing counsel regarding case management issues; supervising performance of case management tasks; reviewing removal papers; participating in calls regarding case strategy) (9.3 hours); *discovery* (assisting in drafting amended 30(b)(6) deposition notice) (.2 hours); *motion practice* (assisting in drafting of motion for alternative service) (.3 hours); *settlement* (assisting in drafting terms sheet and mediation statement; assist in selecting mediator; attending mediation; assisting in draft settlement agreement and supporting exhibits, including proposed class notice, claim form, and proposed orders; assisting in drafting motion for approval of settlement and supporting documents (21.8 hours). **Grand Total: 38.2 hours.**

- Marie McCrary: *case initiation* (assisting in drafting the complaint and CLRA letter) (8.8 hours); *case management and strategy* (including, assisting in drafting case management

GUTRIDE DECLARATION IN SUPPORT OF PLAINTIFF'S MOTION
FOR APPROVAL OF CLASS SETTLEMENT

1  statements; communicating with co-counsel regarding case strategy, deadlines, and tasks;

2  communicating with opposing counsel regarding case management issues; supervising

3  performance of case management tasks; participating in calls regarding case strategy) (9.9

4  hours); *discovery* (drafting protective order and affidavit in support of protective order;

5  drafting electronically stored information ("ESI") order; assisting in drafting ESI search

6  terms and letter regarding the same; communicating with opposing counsel regarding

7  protective order, ESI order, scheduling depositions, and other discovery issues; assisting in

8  drafting initial disclosures; assisting in drafting electronic service agreement; assisting in

9  drafting discovery responses; reviewing Plaintiff's deposition transcript and assisting in

10  drafting Plaintiff's errata to his deposition transcript; and assisting in drafting initial and

11  amended 30(b)(6) deposition notices) (21.1 hours); *motion practice* (assisting in drafting of

12  motion for alternative service) (.7 hours); *expert work* (consulting with potential experts;

13  assisting with preparation of expert engagement agreement) (.3 hours); *miscellaneous tasks*

14  (.2 hours); *settlement* (assisting in drafting terms sheet and mediation statement; assisting in

15  drafting settlement agreement and supporting exhibits, including proposed class notice,

16  claim form, and proposed orders; assisting in drafting motion for approval of settlement and

17  supporting documents (68.5 hours). **Grand Total: 109.5 hours.**

18  • Todd Kennedy: *case initiation* (assisting with drafting complaint and investigation) (2

19  hours); *case management and strategy* (assisting with service issues) (.1 hours); *discovery*

20  (assisting with drafting document requests) (2.2 hours); *settlement* (participating in calls

21  regarding mediation and settlement agreement) (.2 hours). **Grand Total: 4.5 hours.**

22  • Kristen Simplicio: *case management and strategy* (participating in calls regarding case

23  strategy) (.2 hours). **Grand Total: .2 hours.**

24  • Anthony Patek: *case initiation* (researching legal issues for drafting complaint; assisting

25  with drafting CLRA letter) (5.4 hours); *case management and strategy* (drafting document

26  preservation letter; drafting case management statement; communicating with co-counsel

27  regarding case strategy, deadlines, and tasks) (8.5 hours); *discovery* (assisting with drafting

28

document requests; reviewing document production; preparing electronic service agreement) (8.6 hours). **Grand Total: 22.5 hours.**

- Stephen Raab: *case management and strategy* (including, assisting in drafting case management statements; communicating with co-counsel regarding case strategy, deadlines, and tasks; communicating with opposing counsel regarding case management issues including negotiating stipulations; participating in calls regarding case strategy) (9.9 hours); *discovery* (assisting in drafting ESI search terms and letter regarding the same; communicating with opposing counsel regarding scheduling depositions, and other discovery issues; assisting in drafting discovery responses; assisting in the preparation of Plaintiff for his deposition; attending Plaintiff's deposition; assisting in drafting amended 30(b)(6) deposition notice) (41.8 hours); *motion practice* (researching, including Taiwanese law regarding service requirements, and drafting of motion for alternative service and documents in support of the same) (28.2 hours); *expert work* (consulting with potential expert; assisting with preparation of expert engagement agreement) (1 hours); *miscellaneous tasks* (including, supervising alternative service on ASUSTek) (8.2 hours); *settlement* (assisting in drafting terms sheet and mediation statement; communicating with opposing counsel regarding documents produced in response to informal discovery for mediation and analyzing the same; traveling to and attending mediation; assisting in drafting settlement agreement and supporting exhibits, including proposed class notice, claim form, and proposed orders; assisting in drafting motion for approval of settlement and supporting documents (84.1 hours). **Grand Total: 173.2 hours.**

- Jessica Kagansky: *case management and strategy* (participating in calls regarding case strategy) (.4 hours); *discovery* (assisting with drafting electronic search terms and letter regarding the same) (9 hours). **Grand Total: 9.4 hours.**

- Kyle Wilson: *settlement* (assisting with drafting exhibits to settlement agreement) (2 hours). **Grand Total: 2 hours.**

- Ashley Garcia: *case management and strategy* (participating in calls regarding case

GUTRIDE DECLARATION IN SUPPORT OF PLAINTIFF'S MOTION
FOR APPROVAL OF CLASS SETTLEMENT

1    strategy; assisting in preparing case management statement) (.4 hours); *discovery* (assisting

2    with preparing discovery requests, ESI stipulation, protective order, and document

3    production) (8.3 hours); *settlement* (assisting with preparing exhibits to settlement

4    agreement) (1 hour); and *miscellaneous tasks* (maintaining case file with documents;

5    serving documents per Court order and preparing declaration in support of the same) (5.3)

6    **Grand Total: 15 hours.**

7    • Jennifer Gardner: *discovery* (assisting with drafting deposition notice and affidavit to

8    protective order) (3.25 hours). **Grand Total: 3.25 hours.**

9    26.    The rates charged by my firm have been deemed reasonable in connection with the

10   approval of my firm's fee applications in at least seven recent matters. On April 10, 2019, Judge

11   Cousins in *Fitzhenry-Russell et al. v. Dr Pepper Snapple Group, Inc. et al.* 5:17-cv-00564 approved

12   GSLLP's regular 2018 billing rates of $975 for me, $925 for Seth Safier, $850 for Marie McCrary,

13   $800 for Todd Kennedy, $800 for Kristen Simplicio, $775 for Matt McCrary, $500 for Jessica

14   Kagansky, $260 for Ashley Garcia, and $200 for Jennifer Gardner. On March 29, 2019, in *Pettit et*

15   *al. v. Procter & Gamble Co.,* Case No. 3:15-cv-02150-RS, and on August 29, 2018, in *Koller et al.*

16   *v. Med Foods, Inc., et al.,* Case No. 3:14-CV-2400-RS, Judge Richard Seeborg approved GSLLP's

17   regular 2018 billing rates of $975 for me, $950 for Seth Safier, $800 for Kristen Simplicio, $850 for

18   Marie McCrary, $775 for Matt McCrary, $850 for Todd Kennedy, and $200 for Ashley Garcia. On

19   March 16, 2018, Judge Winifred Smith of the Alameda County Superior Court approved GSLLP's

20   regular 2017 billing rates of $950 for me, $925 for Seth Safier, $775 for Kristen Simplicio, $750 for

21   Marie McCrary, and $725 for Matt McCrary, in *Kumar v. Safeway, Inc.*, Case No. RG 14726707.

22   These 2017 rates were also approved on July 7, 2017 by Judge Gonzales Rogers in *Kumar v. Salov*

23   *North America Corp.*, Case No. 14-cv-2411 (N.D.Cal.). On December 5, 2017, Judge Claudia

24   Wilken approved GSLLP's 2017 rates in *Rainbow Business Solutions v. MBF Leasing*, Case No.

25   10-cv-1993 (N.D.Cal.). On February 24, 2016, Judge Peter Kirwan of the Santa Clara County

26   Superior Court approved rates GSLLP's 2015 rates of $825 for me and $800 for Seth Safier in

27   *Mackinnon v. IMVU, Inc.*, Case No. 111 CV 193767.

28

GUTRIDE DECLARATION IN SUPPORT OF PLAINTIFF'S MOTION
FOR APPROVAL OF CLASS SETTLEMENT

27.    I am a 1994 graduate from Yale Law School. Seth Safier is a 1998 graduate from Harvard Law School. Ms. McCrary is a 2008 graduate of New York University Law School. Mr. Kennedy is a 2003 graduate of Yale Law School. Mr. Raab is a 2005 graduate of New York University Law School. Mr. Patek is a 2003 graduate of the UC Berkeley Boalt School of Law. Ms. Simplicio is 2007 graduate of the American University, Washington College of Law. Ms. Kagansky is a 2016 graduate of Northwestern University School of Law. Kyle Wilson is a 2018 graduate of Columbia Law School.

28.    Mr. Safier and I were previously attorneys at the law firm of Orrick Herrington & Sutcliffe. It is my understanding that attorneys at that firms in the litigation departments, with the same number of years of experience as myself and Mr. Safier are currently billing at hourly rates in excess of $1000 for law school graduates from 1994 and 1998. Similarly, the billing rates of Ms. McCrary, Mr. Patek, Mr. Kennedy and Mr. Raab would all be higher had they remained at their prior firms, which include Quinn Emanuel and Cooley. I also believe the rates paid by Defendants to its attorneys in this case meets or exceeds the rates requested for GSLLP. I believe that my firm's hourly rates are below market for attorneys with similar backgrounds and experience.

29.    The reasonableness of my firm's hourly rates is also supported by several surveys of legal rates, including the following:

i.    In an article entitled "On Sale: The $1,150-Per Hour Lawyer," written by Jennifer Smith and published in the Wall Street Journal on April 9, 2013, the author describes the rapidly growing number of lawyers billing at $1,150 or more revealed in public filings and major surveys. The article also notes that in the first quarter of 2013, the 50 top-grossing law firms billed their partners at an average rate between $879 and $882 per hour. A true and correct copy of this article is attached hereto as **Exhibit 3**.

ii.    In an article published April 16, 2012, the Am Law Daily described the 2012 Real Rate Report, an analysis of $7.6 billion in legal bills paid by corporations over a five-year period ending in December 2011. A true and correct copy of that article is attached hereto as **Exhibit 4**. That article confirms that the rates charged by experienced and well- qualified attorneys have continued to rise over this five-year period, particularly in large urban areas like the San Francisco Bay Area. It also shows, for example, that the top quartile of lawyers bill at an average of "just under $900 per hour."

iii.     Similarly, on February 25, 2011, the Wall Street Journal published an on-line article entitled "Top Billers." A true and correct copy of that article is attached hereto as **Exhibit 5**. That article listed the 2010 and/or 2009 hourly rates for more than 125 attorneys, in a variety of practice areas and cases, who charged $1,000 per hour or more. Indeed, the article specifically lists eleven (11) Gibson Dunn & Crutcher attorneys billing at $1,000 per hour or more.

iv.     On February 22, 2011, the ALM's Daily Report listed the 2006-2009 hourly rates of numerous San Francisco attorneys. A true and correct copy of that article is attached hereto as **Exhibit 6**. Even though rates have increased significantly since that time, my firm's rates are well within the range of rates shown in this survey.

v.      The Westlaw Court Express Legal Billing Reports for May, August, and December 2009 (attached hereto as **Exhibit 7**) show that as far back as 2009, attorneys with as little as 19 years of experience were charging $800 per hour or more, and that the rates requested here are well within the range of those reported. Again, current rates are significantly higher.

vi.     The National Law Journal's December 2010, nationwide sampling of law firm billing rates (attached hereto as **Exhibit 8**) lists 32 firms whose highest rate was $800 per hour or more, eleven firms whose highest rate was $900 per hour or more, and three firms whose highest rate was $1,000 per hour or more.

vii.    On December 16, 2009, The American Lawyer published an online article entitled "Bankruptcy Rates Top $1,000 in 2008-2009." That article is attached hereto as **Exhibit 9**. In addition to reporting that several attorneys had charged rates of $1,000 or more in bankruptcy filings in Delaware and the Southern District of New York, the article also listed 18 firms that charged median partner rates of from $625 to $980 per hour.

viii.   According to the National Law Journal's 2014 Law Firm Billing Survey, law firms with their largest office in New York have average partner and associate billing rates of $882 and $520, respectively. Karen Sloan, $1,000 Per Hour Isn't Rare Anymore; Nominal Billing Levels Rise, But Discounts Ease Blow, National Law Journal, Jan. 13, 2014. The survey also shows that it is common for legal fees for partners in New York firms to exceed $1,000 an hour. Id. A true and correct copy of this survey is attached hereto as **Exhibit 10**.

ix.     According to a February 9, 2016 article from the Wall Street Journal, "Kirkland & Ellis LLP's top hourly billing rate is now $1,445." A true and correct copy of this article is attached hereto as **Exhibit 11**.

x.      According to a May 11, 2018 article from the New York Times, Kirkland & Ellis was "charging as much as $1,745 an hour" in the

GUTRIDE DECLARATION IN SUPPORT OF PLAINTIFF'S MOTION
FOR APPROVAL OF CLASS SETTLEMENT

Toys 'R' Us bankruptcy case. A true and correct copy of this article is attached hereto as **Exhibit 12**.

30.     Plaintiff's Counsel has also calculated their lodestar using the rates provided in the Laffey Matrix, which this Court has recognized is a "well-established objective source for rates that vary by experience." *In re HPL Techs., Inc., Sec. Litig.*, 366 F. Supp. 2d 912, 921 (N.D. Cal. 2005). After adjusting the rates, which are tailored for the District of Columbia, by approximately 8.6% for Bay Area attorneys, as done by Judge Walker in *In re HPL Techs., Inc., Sec. Litig.*, GSLLP's lodestar computed using the Laffey Matrix's 2018-2019 is shown in the following table:

| Timekeeper | Hours | 2018-2019 *Laffey* Rate | *Laffey* Rate with 8.6% Bay Area Multiplier | Total |
|---|---|---|---|---|
| Adam Gutride | 20.4 | $894.00 | $970.88 | $19,806.03 |
| Seth Safier | 38.2 | $894.00 | $970.88 | $37,087.77 |
| Marie McCrary | 109.5 | $742.00 | $805.81 | $88,236.41 |
| Todd Kennedy | 4.5 | $742.00 | $805.81 | $3,626.15 |
| Anthony Patek | 20.2 | $742.00 | $805.81 | $16,277.40 |
| Stephen Raab | 173.2 | $742.00 | $805.81 | $139,566.64 |
| Kristen Simplicio | 0.2 | $742.00 | $805.81 | $161.16 |
| Jessica Kagansky | 9.4 | $371.00 | $402.91 | $3,787.32 |
| Kyle Wilson | 2 | $371.00 | $402.91 | $805.81 |
| Ashley Garcia | 15 | $202.00 | $219.37 | $3,290.58 |
| Jennifer Gardner | 3.25 | $202.00 | $219.37 | $712.96 |
| **TOTAL** | **395.85** | | | **$313,358.24** |

16
GUTRIDE DECLARATION IN SUPPORT OF PLAINTIFF'S MOTION
FOR APPROVAL OF CLASS SETTLEMENT

31.     Based on the facts above and those set forth in the declaration of Esfand Nafisi filed herewith, the total lodestar incurred by Plaintiff's Counsel is as follows:

| Firm | Hours | Lodestar | Lodestar Using Adjusted *Laffey* Matrix |
|---|---|---|---|
| GSLLP | 395.85 | $333,086.25 | $313,358.24 |
| M&R | 413.60 | $272,361.00 | $272,361.00 |
| **TOTAL** | 809.45 | $605,447.25 | $585,719.24 |

32.     Expenses are accounted for and billed separately and are not duplicated in my professional billing rate. GSLLP has not received reimbursement for expenses incurred in connection with this litigation. As of June 10, 2019, GSLLP incurred a total of $7,888.74 in unreimbursed actual third-party expenses in connection with the prosecution of these cases. The actual expenses incurred in the prosecution of these cases are reflected on the computerized accounting records of my firm prepared by bookkeeping staff, based on receipts and check records, and accurately reflect all actual expenses incurred. Some of the expenses included below are known to us but yet to be invoiced or have been invoiced but not yet paid. The expenses that have yet to be invoiced, for example, include expenses for courtesy copies of this Motion and expenses associated with traveling to the preliminary and final approval hearings and are estimated based on my experience. A complete breakdown of all expenses is attached as **Exhibit 13**.

33.     Based on the facts above and those set forth in the declaration of Esfand Nafisi filed herewith, the total expenses incurred by Plaintiff's counsel is as follows:

| Firm | Expenses |
|---|---|
| GSLLP | $7,888.74 |
| M&R | $5,882.59 |
| TOTAL | $13,771.33 |

GUTRIDE DECLARATION IN SUPPORT OF PLAINTIFF'S MOTION
FOR APPROVAL OF CLASS SETTLEMENT

1   **E.     GSLLP's Continuing Obligations to Class Members**

2      34.     If this Court grants preliminary approval to the Settlement, GSLLP will establish

3   standardized procedures to ensure that all inquiries from Settlement Class Members are timely and

4   accurately handled. GSLLP will also work with the Settlement Administrator to assure that

5   settlement website functions properly (i.e., is easy to use and properly designed). GSLLP will also

6   work with the Settlement Administrator to assure that notice is disseminated in accordance with the

7   terms of the Settlement Agreement. GSLLP will receive weekly updates from the Settlement

8   Administrator regarding the administration of the settlement. GSLLP will continue in this capacity

9   should the settlement be finally approved. GSLLP will prepare for and appear at the fairness

10  hearing. If the settlement is approved and fees awarded, GSLLP also will oppose any appeals that

11  may be filed. Based on my experience with class actions, I additionally anticipate that there will be

12  another 50-75 hours of work before this Litigation is entirely complete and an estimated 175-250

13  hours of work if this Court's judgment is appealed.

14  **F.     Service Award To Plaintiff**

15     35.     Plaintiff is requesting a Representative Service Award of $5000. To date, Plaintiff's

16  involvement in this litigation has been excellent. For example, Plaintiff searched his personal

17  records for relevant documents and attended his deposition. Plaintiff also took on substantial risk,

18  most importantly the risk of publicity and notoriety and the risk of bearing Defendant's costs should

19  the litigation have ultimately been unsuccessful. Further, Plaintiff also agreed to enter into a broader

20  release than the other class members. In my opinion, Plaintiff's participation in this litigation has

21  been exemplary.

22  **G.     Information Required by N.D. Cal. Procedural Guidance for Class Action Settlements.**

23     36.     The proposed settlement administrator is Angeion Group. Defendants are bearing the

24  costs of claims administration and they selected the administrator without input from Plaintiff.

25  Nevertheless, GSLLP has worked with Angeion Group in the past as it administered the Deoleo

26  olive oil settlement (*Koller v. Med Foods, Inc.*, Case 3:14-cv-02400-RS) involving my firm. My

27  partner Ms. McCrary spoke to Steven Weisbrot, the principal at Angeion Group who will be

28

1  responsible for administering this settlement, about the plan to provide notice and to ensure a robust

2  claims rate. Based on Ms. McCrary's conversation and on the experience of GSLLP, I believe that

3  Angeion will adequately and professionally discharge its duties as settlement administrator.

4        37.      Pursuant to N.D. Cal. Procedural Guidance for Class Action Settlements ("N.D. Cal.

5  Guide") ¶1(g), GSLLP estimates, based on their experiences with recent settlements in consumer

6  fraud cases and the input of the claims administrator, there will be between 3,000 and 4,000 claims

7  filed. The information requested by N.D. Cal. Guide ¶11 regarding past comparable class

8  settlements obtained by GSLLP is provided in the chart attached hereto as **Exhibit 14**.

9        I declare under penalty of perjury under the laws of the state of California that the foregoing

10  is true of my own personal knowledge.

11        Executed at Berkeley, California, this 8th day of July, 2019.

12                                            /s/ Adam J. Gutride
                                             Adam J. Gutride, Esq.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GUTRIDE DECLARATION IN SUPPORT OF PLAINTIFF'S MOTION
FOR APPROVAL OF CLASS SETTLEMENT