United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JOSEPH CARLOTTI,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ASUS COMPUTER INTERNATIONAL, et al.,<br><br>　　　　　Defendants. | Case No.  18-cv-03369-DMR<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

On May 4, 2018, Plaintiff Joseph Carlotti filed a class action complaint in Alameda County Superior Court against Defendants ASUS Computer International ("ACI") and ASUSTek Computer Inc. ("ASUSTek").  [Docket No. 1-1 ("Compl.").]  ACI removed the action to this court on June 7, 2018 under the Class Action Fairness Act.  [Docket No. 1.]  On July 8, 2019, Plaintiff filed a motion for preliminary approval of a class action settlement, which was granted on November 19, 2019.  [Docket Nos. 59 ("Prelim. Mot."), 71 ("Order on Prelim. Approval").]  The parties now seek final approval of the settlement.  [Docket No. 78 ("Final Mot.").]  The court held a hearing on June 11, 2020.

For the reasons stated below, the motion for final approval is granted.

I. BACKGROUND

Plaintiff alleges that Defendants manufactured and sold two laptop models that contain defects: the ASUS GL502VS ("VS") and the ASUS GL502VKS ("VKS").  These models were allegedly advertised as "portable laptops with a powerful graphical processor suited for gaming and video editing."  Compl. ¶ 2.  However, according to Plaintiff, the laptop models contain two main defects that render them inadequate for these processes.  *Id.* ¶ 1.  First, the laptops allegedly have several issues relating to their power supply units, including: (1) the battery drains during use, even

United States District Court
Northern District of California

when connected to a power outlet; (2) there are "significant reductions in computational performance" when the battery power is low; and (3) there is accelerated degradation of the batteries ("Power Defect"). *Id.* ¶ 2. Second, Plaintiff claims that the laptops' cooling system is insufficient to prevent overheating, leading to reduced durability and performance ("Overheating Issue"). *Id.* ¶ 6.

The operative complaint proposes a class of "[a]ll persons in the United States who purchased one or more ASUS GL502VS or GL502VSK laptops." Compl. ¶ 83. The California Subclass includes "[a]ll members of the Class who made their purchase in California." *Id.* On behalf of the putative class and subclass, Plaintiff brings numerous claims for relief, including: (1) breach of express warranty; (2) breach of the implied warranty of merchantability; (3) violations of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*; (4) deceit and fraudulent concealment; (5) unjust enrichment; (6) violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*; (7) violations of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500; (8) violations of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 *et seq.*; and (9) violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*

Plaintiff filed the complaint in Alameda County Superior Court on May 4, 2018. *Id.* ¶ 2. Defendant ACI removed the case to this district on June 7, 2018. After conducting discovery, the parties reached a settlement on March 19, 2019 through mediation before Martin Quinn, Esq. at JAMS. No motions for summary judgment or class certification were filed. On August 22, 2019, the court held a hearing on Plaintiff's motion for preliminary approval of the class action settlement. Following the hearing, court ordered the parties to submit additional information about the proposed settlement. [Docket No. 65.] The parties submitted supplemental briefing on September 12, 2019 and October 7, 2019. [Docket Nos. 68, Supplemental Brief in Support of Preliminary Approval ("Supp. Br."), 70.] The court granted the motion for preliminary approval on November 19, 2019. [Docket No. 71 ("Order on Prelim. Approval").] The terms of the settlement agreement ("Agreement")[1], and the court's preliminary evaluation of those terms, are set forth in detail in the

_____

[1] All references to the Agreement throughout this order refer to the amended Agreement attached as Exhibit A to Docket No. 70, Third Declaration of Adam Gutride ("Third Gutride Decl.").

1   order granting the motion for preliminary approval of the class settlement and are therefore not

2   repeated here.  [Docket No. 71].  Plaintiff filed a motion for final approval on May 29, 2020, along

3   with supporting documentation.  [Docket Nos. 78-81.]  Defendants filed a supporting declaration

4   on June 1, 2020.  [Docket Nos. 82, Declaration of Weifen Liu ("Liu Decl.").]

5   **II.   MOTION FOR FINAL APPROVAL**

6       "The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class

7   actions."  *McKnight v. Uber Techs., Inc.*, No. 14-cv-05615-JST, 2017 WL 3427985, at *2 (N.D.

8   Cal. Aug. 7, 2017) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

9   The settlement of a certified class action must be "fair, reasonable, and adequate." Fed. R. Civ. P.

10  23(e)(2).  "The court's role in reviewing a proposed settlement is to represent those class members

11  who were not parties to the settlement negotiations and agreement." *Tadepalli v. Uber Techs., Inc.*,

12  No. 15-cv-04348-MEJ, 2016 WL 1622881, at *6 (N.D. Cal. Apr. 25, 2016).

13      In granting the motion for preliminary approval, the court thoroughly examined the fairness

14  of the settlement under the factors set forth in *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566,

15  575 (9th Cir. 2004), the Rule 23(e)(2) factors, and the Northern District of California's Procedural

16  Guidance for Class Action Settlements.[2]  The court also found it proper to conditionally certify the

17  proposed settlement class.  There were no objections from class members as to any aspect of the

18  proposed settlement.  Accordingly, the court does not find a reason to revisit its prior findings, and

19  addresses only the matters that could not be finally resolved at preliminary approval: (1) whether

20  notice to the class was effective; (2) whether the class member response was favorable; and (3)

21  whether the requested attorneys' fees and costs are reasonable.

22      **A.   Adequacy of Notice**

23      Rule 23 requires the court to consider "the effectiveness of any proposed method of

24  distributing relief to the class, including the method of processing class-member claims." Fed. R.

25  Civ. P. 23(e)(2)(C)(ii).  "Adequate notice is critical to court approval of a class settlement under

26  Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).  "[N]otice must be

27

28  _____

[2] Available at https://www.cand.uscourts.gov/ClassActionSettlementGuidance.

*United States District Court*
*Northern District of California*

'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Tadepalli v. Uber Techs., Inc.*, No. 15-cv-04348-MEJ, 2016 WL 1622881, at *6 (N.D. Cal. Apr. 25, 2016) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

The Agreement provided for notice to the roughly 24,800 class members through numerous methods, including by email to class members for whom an email address is available; by postcard for those whom a physical mailing address is available; by both email and postcard if possible; published notice in People magazine and USA Today; publication of an online notice on internet websites and social media platforms; publication on Defendants' websites and social media platforms, publication on Defendants' websites and social media platforms; and publication on a settlement website. Agreement ¶ 7.2. The notice program included methods for trying alternate means of contacting class members if an email or mail is returned as undeliverable. For example, if mail was returned as undeliverable, then the claims administrator would use a skip trace search to identify updated addresses. *Id.* ¶ 7.2(e). The court previously approved this notice process and appointed Angeion Group, LLC ("Angeion") as the Claim Administrator. Order on Prelim. Approval ¶¶ 15-16, 31.

Steven Weisbrot, a partner at Angeion who oversaw the notice program in this case, submitted a declaration outlining the effectiveness of the notice program. [Docket No. 79, Second Declaration of Steven Weisbrot ("Second Weisbrot Decl.").] He testifies that Angeion's media notice program—which consisted of digital banner ads, print publications, and a press release—delivered 17,140,450 digital banner ad impressions and a 76.75% reach with an average frequency of 3.11 times each. *Id.* ¶ 7. The digital banner ads ran for four consecutive weeks on websites targeted to likely class members. *Id.* ¶ 8. Angeion published notice of the settlement in *People Magazine* and *USA Today*, and issued a press release via *PR Newswire* that was picked up by 143 media outlets. *Id.* ¶¶ 14-15.

Angeion established a website providing detailed information on the settlement ("Settlement Website"). Second Weisbrot Decl. ¶ 23. Defendants posted links to the Settlement Website on their Twitter and Facebook social media accounts. *Id.* ¶ 12. The Settlement Website included links to

the long-form notice, a Frequently Asked Questions Page, documents filed in the case, and claim forms. *Id.* ¶ 23. Class members were able to file claims and upload supporting documentation on the website, as well as send questions to a dedicated email address. *Id.* As of May 28, 2020, the Settlement Website had 119,100 unique visitors and 218,766 page views. *Id.* ¶ 24.

In terms of direct notice to the class members, Angeion sent notice via email to 13,322 class members, and via postcard to 2,194 class members.[3] Second Weisbrot Decl. ¶¶ 19-20. The contact information was provided to Angeion by Defendants. *Id.* ¶ 16. Of the emails sent, 4,344 were opened (32.6%) and 55 were invalid and could not be delivered. *Id.* ¶ 19. Of the postcards sent, 345 were initially undeliverable. *Id.* ¶ 21. Angeion performed a skip trace search to find updated addresses for individuals who had filed a change of address form with the USPS within the last four years and were able to re-mail 166 postcards to updated addresses. *Id.* In total, 191 postcard notices were undeliverable. Defendants and Angeion did not have email addresses for the individuals with the invalid mailing addresses. *Id.* ¶ 22.

The record does not reveal anything that raises concerns about the reach and effectiveness of the notice program. Accordingly, the court finds that the notice distribution plan was the "best notice that is practicable under the circumstances," consistent with Rule 23(c)(2).

**B.    Class Member Response**

In response to the notice program, Angeion received 31,932 timely claim form submissions.[4] Second Weisbrot Decl. ¶ 26. Angeion reviewed the timely claim form submissions and preliminarily approved 1,256 claim forms. *Id.* ¶ 27. For 27,559 of the claim forms deemed deficient, Angeion sent email notices of the deficiencies and instructed claimants on how to cure the defects.[5]

---

[3] As reflected in the court's order on preliminary approval, notice to class members was provided by both email and postcard if available; accordingly, these numbers may reflect duplicate notice to some class members. *See* Order on Prelim. Approval at 15-16.

[4] Notably, ASUS only sold a total number of 24,798 laptops subject to the class claims. Second Weisbrot Decl. ¶ 16.

[5] Deficiency notices were not provided for certain submissions, including 196 submissions that concerned ineligible laptop models, 36 submissions that were accompanied by fraudulent proofs of purchase, and 2,866 submissions that did not include valid email addresses. Second Weisbrot Decl. ¶ 29 fn. 3.

United States District Court
Northern District of California

United States District Court
Northern District of California

*Id.* ¶ 29.  At the hearing, in response to the court's questions, counsel explained that the vast number of deficient claims appeared to be seeking relief for laptop models other than the two covered by this settlement.  A much smaller portion of the deficiencies were related to potential mistakes in providing correct serial numbers.  Following the cure process, Angeion approved an additional 143 claims.  *Id.* ¶ 31.  After deduplicating the approved submissions, there were a total of 621 approved claims.  *Id.* ¶ 33.  Of these, 444 belonged to Group A, 41 to Group B, and 136 to Group C.  *Id.* Additionally, 376 Group B members will receive relief without the need for filing a claim form.  *Id.* Altogether, 997 claimants will receive monetary benefits.  *Id.* ¶ 34.  In addition, as of May 22, 2020, Defendants have received 37 requests for repairs under the extended warranty provided by the Settlement.  *Id.* ¶ 36.

Plaintiff estimated a claims rate of approximately 4-8% of all class members.  The actual claims rate (considering only valid, nonduplicate claims) was 4.02% (997 claimants/24,798 laptops sold).  The court previously examined comparator cases for product defect cases.  *See* Order on Prelim. Approval at 16-17.  *In re: Arctic Sentinel, Inc. [f/k/a Fuhu, Inc.], et al.*, No. 15-css-12465 (Bankr. Del.) ("*Fuhu*") was a class action involving defective electronic tablets.  In that case, the valid claims rate was approximately 4.7%.  *See* Docket No. 68-1, Second Declaration of Adam Gutride ("Second Gutride Decl."), Ex. J ¶ 15.]  The notice program was similar to the program used in this case in that it used direct email notice, publication in *People Magazine* and *Time*, and ad impressions.  *Id.* ¶¶ 6-11.  *In re Lenovo Adware Litig.*, No. 15-md-02624-HSG, 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019) ("*Lenovo*") concerned a software program that allegedly compromised consumer's personal information and degraded computer performance.  The claims rate in *Lenovo* was approximately 10.9%.  Supp. Br. at 12-13; Second Gutride Decl., Ex. K ¶ 21.  Angeion also served as the claim administrator in *Lenovo* and used a similar notice program as the one approved here.  Second Gutride Decl., Ex. K ¶¶ 5-15.

Although the valid claim rate percentage in this case is less than either *Lenovo* or *Fuhu*, there are no indicia of problems with the notice program or claims process.  In *Lenovo*, any consumer who purchased a laptop with the defective program could recover some amount of money regardless of whether they were able to prove any damages.  Here, only class members who experienced a

defect can recover under the Settlement, and so it is reasonable to expect a lower claim rate than that in *Lenovo*. Although *Fuhu* is more similar in that claimants had to aver under penalty of perjury that they experienced a defect with the electronic tablets, the defendants in that case estimated that approximately 8% of the devices were defective. By contrast here, Defendants claim (and at the hearing, Plaintiffs' counsel confirmed) that the defect affects approximately 2% of VS Laptops and .05% of VSK Laptops. Supp. Br. at 14. A lower defect rate would reasonably lead to a lower claim rate. Therefore, under the circumstances of this case, a claims rate of 4% is reasonable.[6]

It is also notable that Angeion did not receive any objections from class members. Second Weisbrot Decl. ¶ 35. The administrator received 28 opt-out requests, but of those, only one was from a class member. *Id.* "Courts have repeatedly recognized that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *De Leon v. Ricoh USA, Inc.*, No. 18-cv-03725-JSC, 2020 WL 1531331, at *11 (N.D. Cal. Mar. 31, 2020) (citation omitted); *see also Lenovo*, 2019 WL 1791420 (approving settlement where 1 class member objected and 77 opted out); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004). Therefore, the absence of any objections and only 1 validated opt-out request weighs strongly in favor of granting final approval.

Considering the above factors and the factors evaluated in the order granting preliminary approval, the court finds that the Settlement Agreement is fair, adequate, and reasonable, and that the class members received adequate notice. Accordingly, Plaintiff's motion for final approval of the class action settlement is granted.

## III.    MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD

### A.    Attorneys' Fees

Class counsel request, and Defendants do not oppose, attorneys' fees and expenses of $787,500. "District courts must be skeptical of some settlement agreements put before them because

---

[6] Applying a 2.05% defect rate to the 24,800 laptops covered by this settlement results in 508 claims, which is roughly consistent with the 997 approved claims in this case indicating a 4% defect rate.

United States District Court
Northern District of California

they are presented with a bargain proffered for approval without benefit of an adversarial investigation." *Hanlon*, 150 F.3d at 1021 (internal quotations and citations omitted). "These concerns warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Id.* In a diversity case, state law governs the determination of attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The primary method for assessing fees under California law is the lodestar method, which is calculated "by multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case." *Wolph v. Acer Am. Corp.*, No. 09-cv-01314 JSW, 2013 WL 5718440, at *2 (N.D. Cal. Oct. 21, 2013). The lodestar amount may be cross-checked through a percentage of the benefit analysis. *Id.*

### 1.      Lodestar Method

Plaintiff is represented by counsel from Gutride Safier, LLP ("GSLLP") and Migliaccio & Rathod ("M&R"). Adam Gutride of GSLLP submitted a declaration in support of the motion for preliminary approval and attached a resume of the firm's cases. [Docket No. 61, First Declaration of Adam Gutride ("First Gutride Decl."), Ex. 2.] GSLLP has been appointed as class counsel in more than 25 consumer cases and has overseen more than a dozen large class action settlements. First Gutride Decl. ¶ 13. Esfand Nafisi of M&R also submitted a declaration and attached the resumes of M&R attorneys, as well as a list of the notable consumer cases prosecuted by the firm. [Docket No. 62, First Declaration of Esfand Nafisi ("First Nafisi Decl."), Ex. 1.]

#### a.      Hourly Rates

GSLLP calculates its lodestar at $453,452.50, representing 516.5 hours of work by thirteen timekeepers. [Docket No. 80, Fourth Declaration of Adam Gutride ("Fourth Gutride Decl.") at 4.] Partners Marie McCrary, Seth Safier, and Adam Gutride report hourly billing rates of $950, $1025, and $1025, respectively. *Id.* Rates for other attorneys range from $450 to $900 per hour, and the two legal assistants billed $225 and $275 per hour. *Id.* M&R calculate their lodestar at $394,484.22, representing 538.6 hours of work by five timekeepers. [Docket No. 81, Second Joint Declaration of Nicholas Migliaccio and Esfand Nafisi ("Second Joint M&R Decl.") at 3.] This amount includes

United States District Court
Northern District of California

United States District Court
Northern District of California

1    attorney billing rates of $747 per hour for three senior attorneys, $372 per hour for a second-year

2    associate, and $202 for a paralegal. *Id.*

3       "Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the

4    community, and rate determinations in other cases, particularly those setting a rate for the

5    plaintiff['s] attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers*

6    *of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The rates claimed by GSLLP's

7    attorneys have been approved by other courts in this district. *See, e.g.*, *Fitzhenry-Russell v. Coca-*

8    *Cola Co.*, Case No. 17-cv-603-EJD, Docket No. 95 at 17 (N.D. Cal. Oct. 3, 2019) (finding that

9    GSLLP's rates of between $450 and $1,025 per hour are "reasonable and commensurate with those

10   charged by attorneys with similar experience who appear in this Court"); *Pettit v. Proctor & Gamble*

11   *Co.*, Case No. 15-cv-2150-RS, Docket No. 135, at 9 (N.D. Cal. Mar. 25, 2019) (approving GSLLP's

12   2018 rates ranging from $500 to $975 per hour); *Rainbow Bus. Sols. v. MBF Leasing LLC*, Case

13   No. 10-cv-01993-CW, 2017 WL 6017844, at *1-2 (N.D. Cal. Dec. 5, 2017) (finding GSLLP's rates

14   of up to $950 per hour reasonable); *Kumar v. Salov N. Am. Corp.*, Case No. 14-cv-2411-YGR, 2017

15   WL 2902898, at *8 (N.D. Cal. July 7, 2017) (approving GSLLP's 2017 hourly rates of up to $950

16   per hour).

17       M&R, which is based in DC, did not submit any decisions awarding their requested rates in

18   this district.[7] They base their rates on the *Laffey* matrix (http://www.laffeymatrix.com), which

19   provides market rates for attorneys working in the Washington, D.C. and Baltimore areas. Although

20   not determinative for reasonable billing rates in the Bay Area,[8] the *Laffey* matrix has been accepted

21   by the Ninth Circuit as evidence of reasonable hourly rates charged by Washington, D.C. attorneys.

22   *See Mancini v. Dan P. Plute, Inc.*, 358 F. App'x 886, 889 (9th Cir. 2009). District courts have also

23

24   ―――――――――――――

   [7] They cite *Singer v. Postmates*, Case No. 15-cv-1284-JSW, Docket No. 98 (N.D. Cal. Apr. 25,

25   2018), where Judge White approved a class action settlement where M&R served as counsel. The
   fees M&R requested in that case were similar; however, Judge White determined the reasonableness

26   of the award looking only at the percentage of recovery.

27   [8] The Ninth Circuit has observed that "just because the *Laffey* matrix has been accepted in the
   District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone

28   in a legal market 3,000 miles away." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th
   Cir. 2010).

United States District Court
Northern District of California

referenced the *Laffey* matrix as one source of evidence for an attorney's reasonable billing rate. *In re HPL Tech., Inc. Securities Litigation*, 366 F. Supp. 2d 912, 922 (N.D. Cal. Apr. 22, 2005) (applying the *Laffey* matrix in approving a class action fee motion); *Theme Promotions, Inc. v. News Am. Mktg. FSI, Inc*, 731 F. Supp. 2d 937, 948 (N.D. Cal. 2010). One court observed that the *Laffey* matrix rates likely fall below reasonable billing rates in the Bay Area based on the locality pay differential between this geographic location and the Washington-Baltimore area. *Brinker v. Normandin's*, Case No. 14-cv-03007-EJD, 2017 WL 713554, at *2 (N.D. Cal. Feb. 23, 2017) (citing *Theme Promotions, Inc.*, 731 F. Supp. 2d at 948). Courts outside the Northern District have awarded M&R's fees at the rate scale they use. *See, e.g.*, *Snodgrass v. Bob Evans Farms, LLC.*, Case No. 12-cv-768, Docket No. 219, at 5 (S.D. Ohio Feb. 26, 2016) (finding that the lodestar for all class counsel was reasonable, "[c]onsidering the competentce of class counsel in prosecuting this complex litigation, and the risks associated with the prosecution of the claims of the settlement class"); *Bland v. Calfrac Well Svcs. Corp.*, Case No. 12-cv-1407, Docket No. 95, at 2 (W.D. Pa. December 17, 2015) (approving requested fee award and finding that class counsel, including M&R, are "qualified and experienced and have litigated this action successfully, thereby demonstrating their adequacy as counsel"). The reasonableness of the requested rates is further supported by fee decisions in this district, as illustrated by the cases cited above discussing GSLLP's rates.

Finally, the total lodestar of $847,936.72 represents a negative multiplier of about 0.91. *Id.* at 12. A negative multiplier "strongly suggests the reasonableness of [a] negotiated fee." *Rosado v. Ebay Inc.*, Case No. 12-cv-04005-EJD, 2016 WL 3401987, at *8 (N.D. Cal. June 21, 2016) (considering a negative multiplier of .54); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) (supporting the reasonableness of class counsel's lodestar on the basis that a negative multiplier "suggests that the negotiated fee award is a reasonable and fair valuation of the services rendered to the class by class counsel").

In sum, the record supports that the requested hourly rates are reasonable within the context of this case.

### b.       Hours Expended

Class counsel summarized the categories of work that led to the hours expended in this case.

10

*See* Second Gutride Decl. ¶ 25; Fourth Gutride Decl. ¶ 4; Docket No. 68-2, First Joint Declaration of Nicholas Migliaccio and Esfand Nafisi ("First Joint M&R Decl.") ¶¶ 29-33; Second Joint M&R Decl. ¶ 4.  When courts evaluate both the lodestar and the percentage of recovery as cross-checks, they have "generally not been required to closely scrutinize each claimed attorney-hour, but have instead used information on attorney time spent to focus on the general question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys."  *Laffitte v. Robert Half Internat. Inc.*, 1 Cal. 5th 480, 505 (2016) (internal quotation marks and citation omitted); *see also De Leon v. Ricoh USA, Inc.*, No. 18-cv-03725-JSC, 2020 WL 1531331, at *15 (N.D. Cal. Mar. 31, 2020).  The court may, at its discretion, still consider timesheets when evaluating the reasonableness of a lodestar calculation.  *De Leon*, 2020 WL 1531331, at *15.  Following the hearing on the motion for preliminary approval, class counsel submitted detailed time sheets for *in camera* review.  The court reviewed the timesheets and determine that, in general, they show reasonably billed time.  The additional time that counsel has recorded since that time, as reflected in their updated declarations, also appears to have been reasonably expended.

Considering the record as a whole, the court finds that the hours expended by class counsel "adequately reflect[] the degree of time and effort expended by the attorneys."  *Laffitte*, 1 Cal. 5th at 505.

### 2.    Percentage of Recovery

Where the benefit to the class is easily quantified, the court may cross-check the propriety of a lodestar fee award by considering a percentage-of-the-benefit analysis.  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *Wolph v. Acer Am. Corp.*, Case No. No. 09-cv-01314 JSW, 2013 WL 5718440, at *2 (N.D. Cal. Oct. 21, 2013).  The benchmark for a reasonable fee award is 25% of the total class recovery.  *Bluetooth*, 654 F.3d at 942.  It is not appropriate to base attorneys' fees based only on the amount paid to class members who submitted claims. *See Williams v. MGM-Pathe Commc'ns, Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("We conclude that the district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar."); *accord Ellsworth v. U.S. Bank, N.A.*, 2015 WL 12952698, at *4 (N.D. Cal. Sept. 24, 2015) ("[P]recedent requires courts to

United States District Court
Northern District of California

1   award class counsel fees based on the total benefits being made available to class members rather

2   than the actual amount that is ultimately claimed.").

3         Using a percentage of the total recovery as a cross-check, class counsel argues that the

4   requested fees amount to only 6.4-9.5% of the total settlement value, which Plaintiff initially

5   estimated at between $8.3 million and $11.97 million.  Prelim. Mot. at 33; First Nafisi Decl. ¶ 19.

6   The revised estimate for the maximum total value of the Extended Warranty is $16,110,225.00.

7   Supp. Br. at 9; Docket No. 68-3, Declaration of Jamie Morquecho ("Morquecho Decl.") ¶¶ 2-3.

8   Using that number and the highest estimate of the total monetary recovery, the maximum total value

9   of the settlement is about $21.3 million. Class counsel's lodestar is about 2.8% of this amount.  All

10   of these percentages are well under the presumptively reasonable threshold of 25%. The court notes

11   that these calculations include the estimated value for the injunctive relief (repairs). Courts may

12   consider the value of injunctive relief but must be cautious that "its value is also easily manipulable

13   by overreaching lawyers seeking to increase the value assigned to a common fund." *Staton v. Boeing*

14   *Co.*, 327 F.3d 938, 974 (9th Cir. 2003).  If the monetary value of the injunctive relief is not

15   considered, then the estimated percentage of attorneys' fees substantially increases. The "low"

16   estimation of the monetary portion of the settlement benefits is $2.77 million, and the "high"

17   estimation is $5.20 million.  Final Mot. at 12-13.  Using the $2.77 million figure, the requested fees

18   would be 28.4% (higher than the 25% threshold) while the percentage for the $5.20 million figure

19   is 15.14% (lower than the 25% threshold).  Therefore, even excluding the benefits conferred by the

20   injunctive relief, the requested amount falls within or at least close to the 25% threshold amount.

21         It is worth noting that no class member filed an objection to any aspect of the settlement,

22   including the amount of attorneys' fees and costs.

23         In sum, both the lodestar and the percentage-of-recovery analysis support the requested fee

24   award of $787,500, which includes $14,386.05 in unreimbursed litigation costs.

25       **B.**     **Incentive Award**

26         Plaintiff requests, and Defendants do not oppose, an incentive award of $5,000 to Carlotti,

27   the class representative.  "The request of $5,000 is reasonable as that amount is the presumptive

28   incentive award in [the Northern District of California]." *In re Chrysler-Dodge-Jeep Ecodiesel*

*Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL 536661, at *9 (N.D. Cal. Feb. 11, 2019).

The incentive award requested is presumptively reasonable and there are no considerations at this time that would warrant a lower award. Accordingly, the court approves the requested incentive award.

## IV.   CONCLUSION

For the reasons set forth above, the court grants Plaintiff's motion for final approval and motion for attorneys' fees, costs, and incentive award. Class counsel is awarded $787,500 in fees and costs. Carlotti is awarded $5,000 as an incentive award.

Within 21 days after the distribution of settlement funds and payment of attorneys' fees, class counsel shall file a Post-Distribution Accounting in accordance with the Northern District's Procedural Guidance for Class Action Settlements, *available at* https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements. The Post-Distribution Accounting must contain all information listed in the Guidance, and shall be filed with the court and posted on the Settlement Website.

**IT IS SO ORDERED.**

Dated: June 22, 2020

_____

Donna M. Ryu
United States Magistrate Judge